## James A. Patten v. L. M. Willis et al.

### Gen. No. 13,173.

REAL ESTATE BROKER—*who entitled to commissions as between two adverse claimants.* It is not the broker who first speaks of the property, but he who is the procuring cause of the sale, be he the first or second to engage the attention of the purchaser, who is entitled to the commissions.

Assumpsit. Appeal from the Superior Court of Cook county; the Hon. ARTHUR H. CHETLAIN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1906. Reversed, with finding of facts. Opinion filed June 14, 1907.

**Statement by the Court.** This is a suit brought by appellees to recover commissions for alleged services rendered as real estate brokers in securing a tenant for certain portions of a building owned by appellant. The amended bill of particulars filed by appellees states the demand as follows:

"To commission at rate fixed by Real Estate Board and being the usual and customary charges in the city of Chicago (being 5% of first year's rental for first two years, and 1% of first year's rental for each additional year) for having opened up and undertaken negotiations on behalf and at the express instance of defendant with the Faithorn Printing Company, with the view of securing said Printing Company as a tenant for certain floors of the building known as numbers 66 to 74, both inclusive, Sherman street, Chicago, Illinois, owned by the defendant, which negotiations were thereafter taken in hand by the defendant executing and entering into a lease with said

Printing Company of said premises, said lease commencing, to-wit, January 1, 1904, and running to April 30, 1909, being five years at $9,500 per year, $760."

The issues were submitted to a jury which returned a verdict assessing damages against the defendant at the sum demanded $760. Judgment was rendered on the verdict and defendant appeals.

Joseph E. Paden and Oscar A. Kropf, for appellant.

Moses, Rosenthal & Kennedy, for appellees.

Mr. Presiding Justice Freeman delivered the opinion of the court.

It is insisted in behalf of appellant that there is no evidence upon which the verdict and judgment may be sustained and the court erred therefore in denying appellant's motion to instruct the jury to find the issues in favor of the defendant. In support of this contention appellant's attorneys cite Pratt v. Hotchkiss, 10 Ill. App. 603-605, in which the rule is stated to be "that a broker before he is entitled to commissions must furnish a purchaser who is ready, willing and able to complete the purchase on the terms proposed;" and it is insisted that appellees have failed to prove essential facts necessary to entitle them to recover, viz.: (1) that they had been employed by the appellant to lease the premises upon any certain terms, or (2) that they procured a party who was ready, willing and able to enter into a lease with appellant on terms proposed. See also Metzen v. Wyatt, 41 Ill. App. 487; Parmly v. Farrar, 169 Ill. 606; Lawrence v. Rhodes, 188 Ill. 96.

Appellees' attorneys state that their case rests principally on the testimony of appellee Willis who conducted the alleged negotiations, and that he testified in substance as follows: "I called upon Mr.

Patten and asked him if he would consider a proposition to erect a building on either one of the pieces of property which he had recently acquired on Sherman street, preferably the one further north. He said he had bought the property for the purpose of improving it, and that he was anxious to have tenants. I asked him if he would erect a building to contain forty or fifty thousand feet, inasmuch as that would be about the space the Faithorn people would require. He said that he would prefer to improve the entire lot, which would give a building considerably larger than that, and wanted to know if they would not take the whole building. I told him I would see our parties and advise him later. I left him and went to the Faithorn Printing Company. I said to them that Mr. Patten preferred to improve the entire property, and asked if they would take the whole building and sublet the balance they did not wish for their own business. Mr. Koss said that they would prefer to have a building for themselves alone and would not care to take the entire proposition. I went back to Mr. Patten and made that report, and he said, 'Very well, that he would improve the whole property, operating the building himself and give them such space as they would require.' We reported that to the Faithorn Printing Company and they said they would like to have the plans and specifications. I went back to Mr. Patten and asked him if we could have a plan of the proposed building, and he said he would have his architect give him a plan, and if I would come back by a certain date (which he set probably ten days in advance) he would have it in readiness for me. I called back in accordance with that, and the plan was ready, and Mr. Patten was there and gave it to me. At the time he handed the plan to me he asked me who the people were. I told him it was the Faithorn Printing Company. He said he knew of them. He was not personally acquainted with them; he said he knew

of them and knew they were a reputable house and desirable tenants. The plan was taken immediately over to the Faithorn Printing Company and I saw their manager, Mr. Koss, and he asked if he might keep it for a few days to look it over carefully and until Mr. Faithorn returned to the city. We said that would be entirely satisfactory, and left the plan there. I called upon Mr. Patten and I said the parties were practically agreed and we wanted to get the principals together.''

On cross-examination appellee Willis was asked if when he first called on appellant he ''did not first state to him after handing him your card and introducing yourself that you had a client who desired to have a building erected on his property for his own exclusive use? '' To which the witness replied, ''That was the nature of my business there and very likely I said it, although I don't remember that I said it exactly that way.''

It is claimed in behalf of appellees to be clear from this testimony ''that Mr. Patten accepted the services of a real estate agent in procuring a tenant for the premises he was about to construct,'' that he allowed the agent to conduct negotiations, so being able to ascertain who the tenant was. We do not so understand the evidence. It clearly appears from this witness' testimony that he went to appellant representing a ''client'' so-called, a party who desired to have a building erected for his own exclusive use. By his own testimony appellee Willis, in behalf of himself and his partner, was acting for and in the interests of such client of his own. In the subsequent negotiations he continued acting for this client, in the endeavor to get appellant to erect a building to contain forty or fifty thousand feet for the use of the client. He was told that appellant did not wish to erect such a building but one considerably larger to cover the entire lot, and was asked if his party would take the whole

Patten v. Willis.

of such larger building and "sublet what they did not wish for their own business." His client refused to accept such proposition, and it was dropped. Acting still for this client of his own, the said appellee informed his client that appellant proposed to build and operate himself a building on the premises he had acquired and was told by the client the latter would like to see the plans of the proposed building. These appellee Willis procured from appellant, to whom the witness at appellant's request gave the name of the client for whom he was acting. Appellee delivered the plans to his client and left them there. He then states that he called on appellant and told him the parties were practically agreed, and "we wanted to get the principals together." Conceding all that the witness states, it in effect tends to show nothing more, so far as we can discover, than that he was acting entirely for and in behalf of his said "client," the Faithorn Printing Company. His testimony shows no employment by appellant whatever, no lease effected, nothing accomplished entitling him to a commission from anyone, no terms of leasing accepted or even proposed by appellant or himself. As substantially said in Mears v. Stone, 44 Ill. App. 444-448, appellees did not by the beginning of negotiations with appellant terminating in the latter's refusal to erect a building for the use of the printing company "acquire a lien upon any disposition he might thereafter come into to" lease a portion of a larger building appellant might thereafter erect. "A broker is never entitled to his commissions for unsuccessful efforts" even from the party for whom he is acting. Appellee was not acting for appellant in the case at bar. His own testimony shows that said appellee had been approached by the Faithorn Printing Company with reference to the erection of a building for that company on a piece of property belonging to another party, not appellant. He afterward went to appel-

lant because he saw in a newspaper that appellant had purchased this vacant real estate through other agents.

It is claimed, however, that there was an acceptance and ratification of the alleged services of appellees and consequently an implied contract of employment, inasmuch as the Faithorn Printing Company did subsequently rent from appellant a portion of the building which he erected. Appellant testifies that when appellee Willis first called upon him appellant advised him that Oliver & Scott were appellant's real estate agents in charge of his business. In this appellant is corroborated by his clerk's testimony, and that the agents named were appellant's agents is not disputed. While it is true that the printing company did afterward become tenants of appellant, the evidence is clear, we think, that this was not due to anything done or said by appellees. The latter called as a witness the manager of that company, who testified that seeing the appellees' sign on property of a third party north of Van Buren street, Chicago, and a statement thereon, "Will build to suit tenant," and having in mind that the company was looking for a building for its own occupancy exclusively, he called on appellee Willis who said "he would see his client" and did so. The witness says he never discussed with Willis any arrangement relating to appellant other "than a building for our exclusive use. He never mentioned to me that he would like to have us for tenants of the proposed building of Mr. Patten for floor space. No question of floor space was discussed with Mr. Willis." This manager of the printing company testifies explicitly that when Willis told him he would go and see if he could get appellant to divide the building and build half a building for the company, the witness "told him that would be too much space for our use and the matter was dropped." The manager further states that prior to the time he saw appellee

Willis, Mr. Oliver, the real estate agent through whom the printing company was finally induced to become a tenant of appellant, had called on the witness with regard to another building, a proposition the company did not entertain, and he states that "Oliver had been negotiating with me as a possible tenant for Mr. Patten's property   *   *   *   on which he proposed to erect a building, a long time before I saw Mr. Willis." He testifies that when "Oliver could not get us in there (other property of appellant's) he tried to get us in this building and finally did get us in. It took him a good while to do it, because we wanted a building for our own exclusive use. That was what we had in mind." This evidence is undisputed and tends to show that Oliver was not only first in point of time in negotiating with the printing company to become tenants of appellant, but that he was constantly pursuing such negotiations in appellant's behalf until he finally succeeded in procuring the printing company as tenants on the premises in question. In Fessenden v. Doane, 188 Ill. 228-231, it is said: "One claiming commission for the sale of real estate cannot rightfully claim the benefit of introducing to the defendant a purchaser for the property who had already been introduced to him as such by another party, with and through whom negotiations were already in progress and were continued to a consummation of the sale."

In view therefore of the testimony in behalf of appellees, including that of appellee Willis himself, as well as that in behalf of appellant, we deem it clear that appellees are not entitled to recover in this case. They did not find the tenant for appellant in the first place nor introduce him to appellant's notice, nor did they effect the lease upon which they now seek to recover commissions. What is said in McGuire v. Carlson, 61 Ill. App. 295, is in point except that the evidence in the present case does not support the claim

of appellees that appellant ever employed appellees at all. The court says:

"Unless he specially agrees not to do so, an owner may employ two or more brokers. In such case it is the broker who is the efficient cause of the sale who is entitled to commissions, and this right is not affected by the fact that such broker sells to one whose attention to the property had before been called by another broker. It is not the broker who first speaks of the property, but he who is the procuring cause of the sale, be he the first or second to engage the attention of the purchaser. Mechem on Agency, section 969; Vreeland v. Vetterlein, 33 N. J. L. 247; Sibbald v. The Bethlehem Iron Co., 83 N. Y. 378.

The party selling, where several brokers have been employed, may, in the absence of all collusion on his part pay to the agent through whose instrumentality the sale was brought about, without inquiry as to whether some other broker may not have had something to do with effecting the sale."

For the reasons indicated the judgment of the Superior Court will be reversed with a finding of facts.

*Reversed with finding of facts.*