**H. O. Stone et al., Appellees, v. Moloney-Bennett Belting Company, Appellant.**

**Gen. No. 15,115.**

BROKERS AND FACTORS—*when not entitled to commissions.* A real estate agent who ceases his activities in the renting of property and who abandons his negotiations with a particular party who afterwards makes a lease, is not the procuring cause thereof and is entitled to no commissions.

Assumpsit. Appeal from the Circuit Court of Cook county; the Hon. ALBERT O. MARSHALL, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1908. Reversed. Opinion filed January 6, 1911.

PAM & HURD, for appellant.

EDWIN L. HARPHAM, F. J. CROWLEY and LAMBERT KASPERS, for appellees.

MR. PRESIDING JUSTICE MACK delivered the opinion of the court.

This is an appeal from a judgment for $175 broker's commission claimed to have been earned in connection with a sublease made by the defendant to Kutroff, Pickard & Company of a portion of certain premises leased to but not entirely occupied by defendant.

Plaintiff knowing that defendant would want to sublet a part of the premises, secured on January 14, 1905, "an exclusive renting agency of all space in the building which you are not using for your own business, making a special effort to get you the best tenants at the highest rentals, you to pay us five per cent. of the average yearly rental at the time each lease is closed."

No rental price was fixed by the parties. There is a conflict in the testimony as to the period of the exclusive agency. Defendant claimed that it was to end on May 1, 1905, when it would occupy the part of the premises needed for its own business. Plaintiff at first claimed that it was for the entire period of defendant's lease but subsequently on May 9, 1905, wrote to defendant as follows:

"5/9/1905.

Moloney-Bennet Belting Co.,
    Randolph & Franklin Sts., City.
Gentlemen:
We have your favor of the 6th and have today instructed our man to remove our signs from the building.

We find that attached to the contract is a memorandum written to the writer by Mr. Lawton, dated January 14th, in which he stated that you were to have the right to negotiate leases directly with tenants after May 1st, 'unless we had been previously negotiating with them.' This explains our position, and we therefore return herewith the list sent you on the 5th,

giving the parties with whom we have been negotiating, and if any of them go into the building, we shall expect you to pay us commission according to the contract.

Respectfully yours,<br>(Signed)   H. O. STONE & Co.''

Dict. J. R. MAGILL.''

Defendant replied denying any such obligation, expressing dissatisfaction that plaintiffs had secured no tenant up to that time, offering to permit plaintiffs to secure tenants thereafter and to pay commissions in case plaintiffs finished negotiations and made leases, but refusing to pay commissions in cases defendant itself rented to any of the parties named.

The name of Kutroff, Pickard & Co. was not on the list sent by plaintiffs to defendant, and there is no claim made that this name was omitted by mistake.

Under these circumstances we are of the opinion that plaintiffs did not have any exclusive agency after May 1st by virtue of the original contract and that as Kutroff, Pickard & Co's name was not on the submitted list, defendant would not be liable even if it had agreed to plaintiffs' proposal in the letter of May 9th.

Plaintiffs moreover offered no evidence whatsoever in support of their later contention that they were entitled to commissions on leases made by defendant after May 1st in case plaintiffs had been previously negotiating with the sublessee. Their own agent, who drew up the original proposition of January 14, 1905, to defendant, testified as follows on cross-examination:

"Q. Wasn't there a memorandum to that effect, that they (referring to defendant) were to have a right to rent after the 1st of May put upon that contract? A. There was a memorandum put on by Mr. Magill in our contract. It was typewritten, and attached to it."

The memorandum referred to was not offered in

evidence but the foregoing answer contradicts the claim made by plaintiffs in their letter of May 9th as to its contents.

If therefore plaintiffs are entitled to commissions on this sublease it must be on the ground that they were the brokers through whose agency the sublease was effected. Most of the facts in the case are not disputed. In the beginning of March, 1905, one Poucher, the local agent of Kutroff, Pickard & Company, a New York house, accompanied his friend French, a real estate man, on a search for a store. Passing the premises in question and finding plaintiffs' rent signs thereon, they telephoned plaintiffs to send over a representative. Mr. Russell, plaintiffs' salesman, came and showed them through the building, fixed the price at $5,000 and on the same day, as he testifies, told Moloney, defendant's president, that he had submitted the matter to Poucher. Moloney denies this conversation. Subsequently Russell gave French a blue print of the premises. Poucher submitted the matter to his firm. They rejected it, as Poucher testifies because of the price. Nothing further was done by plaintiffs in regard to the sublease to these parties though they continued to advertise this property with other properties until May 14th and kept their "to rent" signs up until about the same date. Poucher, not finding suitable premises before May 1st, extended the lease on the premises that he then occupied, to January 1, 1906. On May 3, 1905, he wrote French that he would need a place on January 1, 1906, at about $300 a month and subsequently he looked at a dozen or more places.

About the end of June, 1905, Poucher and Moloney meeting on the suburban train, took up the matter because of some suggestion made by a clerk of defendant. Poucher told Moloney that the price was too high and they finally compromised on $3,500, at which price the lease was made on July 20th, effective September 1, 1905.

Would a jury be justified on these facts in finding that plaintiffs were the procuring cause of this sublease? Defendant contends that they establish clearly that the original negotiations were at an end; that the lease resulted from entirely new and independent negotiations in which plaintiffs had no part. Plaintiffs contend that it was for the jury to determine whether or not the transactions with Poucher were continuous, from the time of the original interview with Russell; that it might be true—and they claim on the basis of rejected testimony that it was true—that they did nothing further because they believed defendant had instructed them to await further orders. Notwithstanding the fact that plaintiffs were the brokers through whom the matter of leasing to Kutroff, Pickard & Company was originally brought to defendant's attention, that the only reason for the failure to rent in the beginning was the price and that the premises were subsequently rented to the same parties when the price was reduced, we are of the opinion that a jury would not under this evidence be justified in finding that plaintiffs were the procuring cause of the lease. Their complete inactivity for nearly four months and their failure to list the name of these parties in their letters of May, 1905, demonstrate that they had completely abandoned any negotiations with Poucher.

Poucher's renewal of his old lease, and his efforts to secure other properties demonstrate that he had abandoned all negotiations with plaintiffs and defendant. These were renewed, not with plaintiffs but with defendant alone and at its instigation.

The jury should have been instructed to find for defendant. The clear preponderance of the evidence is against the plaintiffs. It is therefore our duty to reverse the judgment of the trial court.

*Reversed.*