## Nils Bergman, Appellee, v. The First Swedish Building and Loan Association of Chicago, Appellant.

## Gen. No. 16,432.

BROKERS AND FACTORS—*what essential to recover real estate commissions.* In order that a broker may recover commissions for an exchange of properties it must appear that the same was effected through his efforts or through information derived from him. In other words it must be established that he was the procuring cause.

Assumpsit. Appeal from the Superior Court of Cook county; the HON. HENRY V. FREEMAN, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1910. Reversed with finding of facts. Opinion filed March 30, 1912.

BRECHER & CHINDBLOM, for appellant.

WILLIAM E. KEELEY and G. NAT. REEVES, for appellee.

MR. PRESIDING JUSTICE BAUME delivered the opinion of the court.

Plaintiff below recovered a verdict and judgment against defendant for $2,500, alleged to be due him for commission as a real estate broker for effecting an exchange of certain property in the city of Chicago, owned by defendant, for two farms containing 897 acres in LaPorte and Lake counties, Indiana, owned by Charles H. Carmon. To reverse such judgment the defendant prosecutes this appeal.

On October 19, 1905, appellee procured from N. F. Olson, the property agent of appellant, a statement of the rentals and expenses of the property known as the Franklin Building, then offered by appellant for sale or exchange, and appellee claims that Olson then agreed to pay him a commission of 2½ per cent. upon a valuation of $100,000, for his services in finding a purchaser for said property. Appellee proposed an exchange for some acres near Hegewich, but the proposal was not accepted. Thereafter, appellee, acting in conjunction with C. E. Schroer to find a purchaser for the property, caused an advertisement, for the exchange of the property without designating it by name or location, to be published in a newspaper. The advertisement was noticed by Charles H. Carmon, a hotel keeper, land owner and real estate broker, residing in Forrest, Illinois, who evidently communicated with · Schroer in regard to the matter prior to a letter received by the latter about March 29, 1906, wherein Carmon states that he encloses a plat of 1,889 acres in Pulaski county, Indiana, and suggests that he might get the equity in appellant's property and asks for a description and location of the same, so he can send a man to look it over. The next communication in evidence is a letter dated April 30, 1906, from Schroer to Carmon, informing the latter of the terms upon which an exchange of the farm in Pulaski county, Indiana, for appellant's property might be effected, and

suggesting, if such terms are satisfactory, Carmon have his man call at the office of appellee, who would show him the property. It is not controverted that Carmon came to Chicago in response to said letter, and in company with appellee examined the property, either indifferently or critically, but there is a direct conflict in the evidence as to the time when such examination was made, and as to what occurred upon that occasion. Appellee and Schroer both testify somewhat equivocally that Carmon came to Chicago and examined the property in October, 1906, while Carmon fixes the time as May 2nd or 3rd, 1906. The facts and circumstances in evidence leave little room for doubt that the time fixed by Carmon is correct. In their statement of the case counsel for appellee in referring to the time when Carmon inspected the property say: "This was either in May or October, 1906." Schroer's letter to Carmon, inviting an inspection by the latter of the property, bears date April 30, 1906, and requests a reply, "at your earliest convenience." On his cross-examination appellee testified, in substance, that Schroer's letter to Carmon was written about a week before the latter went to Chicago. The manifest confusion of appellee and Schroer, as disclosed by the record, when, after testifying that Carmon went to Chicago in October, they were confronted with the letter of April 30, 1906, above referred to, clearly evidences they were mistaken.

Appellee testified that upon the occasion when Carmon inspected the property, the latter said he liked the property, and would write to appellee or come up personally and make a proposition, and that he (appellee) reported the substance of Carmon's statement to Olson, the property agent of appellant.

It is uncontroverted that following the occasion of Carmon's inspection of the property in May, 1906, appellee did not see Carmon again, or receive any proposition from him for an exchange, or have any

further communication with him, directly or indirectly, relative to the property. Appellee testifies, however, that he often saw Olson and remarked that he (appellee) had not heard anything from Carmon and it was funny that he (Carmon) was so late or slow.

Carmon testifies that he did not own the land in Pulaski county, Indiana, but was acting as a broker in attempting to negotiate an exchange for it; that upon the occasion of his inspection of appellant's property he told appellee he did not think he could get the trade through on the basis proposed.

· Olson testifies that appellee told him Carmon had looked at the building and said the price was too high and he would not take it; that appellee never came with any other proposition from Carmon and the subject was not mentioned again by appellee until May, 1907, when he said he thought he was entitled to a commission.

The evidence further discloses, without contradiction, that during the time of the transactions here involved statements of the rentals and expenses of appellant's property were given by Olson to several real estate brokers, who were negotiating for its sale or exchange; that Ernest Cameron, one of such brokers, advertised the property and thus, or personally, brought it to the attention of E. C. Ware, another broker, in February, 1907; that Ware, who had known Carmon for four or five years, communicated with him with reference to an exchange of the property and in response to such communication Carmon inspected the property with a view to exchanging for it two farms containing 897 acres owned by him in LaPorte and Lake Counties, Indiana; that prior to such inspection of said property Carmon was not informed it was the same property he had inspected in May, 1906, with appellee; that in the latter part of March, 1907, a provisional contract, negotiated by Ware on behalf of Carmon and by Cameron on behalf of appellant, for the ex-

change of the property, was executed; that in the latter part of May following, the exchange was finally consummated and deeds passed, Carmon taking possession June 1, 1907; that broker's commissions for negotiating said exchange of properties were paid by Carmon to Ware and by appellant to Cameron.

We are unable to perceive, upon a consideration of the foregoing evidence and admitted facts, any liability on the part of appellant to pay to appellee the commission claimed for procuring Carmon as a purchaser of the property.

Adopting the statement of the rule most favorable to appellee, it was incumbent upon him to show that the exchange was effected through his efforts or through information derived from him. Rigdon v. More, 226 Ill. 382; Henry v. Stewart, 185 Ill. 448; Hafner v. Herron, 165 Ill. 242.

Appellee and Cameron were equally the agents of appellant to procure a purchaser for the property. True, appellee first directed the attention of Carmon to the property and attempted to negotiate an exchange, but his efforts were wholly fruitless, not because of any default or failure on the part of appellant, but because Carmon abandoned the matter, and appellee thereafter made no further effort whatever to interest him in it. Ten months later, through the wholly independent efforts of Cameron, Carmon was induced to investigate a proposition involving the exchange of lands owned by him for certain property in Chicago, and not until he inspected such property was he apprised of the fact that it was the same property he had formerly inspected at the solicitation of appellee, and the exchange then consummated was uninfluenced by his former inspection of the property or by the long since abandoned efforts of appellee.

In McGuire v. Carlson, 61 Ill. App. 295, cited with approval in Patten v. Willis, 134 Ill. App. 645, it was said: "Unless he specially agrees not to do so, an

owner may employ two or more brokers; in such case it is the broker who is the efficient cause of the sale who is entitled to the commissions; and this right is not affected by the fact that such broker sells to one whose attention to the property had before been called by another broker. It is not the broker who first speaks of the property, but he who is the procuring cause of the sale, be he the first or second who engaged the attention of the purchaser."

A case also in point here is Stone v. Maloney, 159 Ill. App. 366.

Appellee cites Patten v. Willis, 134 Ill. App. 645, and Morton v. Barney, 140 Ill. App. 333, as supporting a right of recovery by him, but in so far as the doctrine there announced is applicable to the facts in the case at bar, they sustain the position of appellant.

The judgment is reversed with a finding of facts.

*Judgment reversed with finding of facts.*

FINDING OF FACTS: We find as ultimate facts that the exchange of properties here involved was not effected through the efforts of appellee, or through information derived from him, and that appellee was not the efficient or procuring cause of said exchange.