## BROOKS v. GEO. Q. CANNON ASS'N.

No. 3230.    Decided Jan. 24, 1919.    (178 Pac. 589.)

1. BROKERS—COMPENSATION—EVIDENCE.  In an action for compensation for procuring a loan for defendant, evidence *held* wholly insufficient to show that plaintiff was the procuring cause in obtaining it, or that she was in the slightest degree instrumental.  (Page 308.)

2. BROKERS—COMMISSIONS—PAYMENT.  Efforts of a broker to entitle him to a commission must have been the efficient or procuring cause of the transaction relied on by him.[1]  (Page 308.)

3. CORPORATIONS—CONTRACTS—RATIFICATION.  If an officer of defendant purporting to act for defendant employed plaintiff as broker and defendant received plaintiff's services, it was liable for the reasonable value thereof, though plaintiff was not formally employed.  (Page 310.)

4. BROKERS—COMMISSIONS—PAYMENT.  Where several brokers attempted to secure a loan for defendant, who in good faith paid the broker who produced the party making the loan, defendant was not liable to others, and was not required to make inquiry as to which broker was the primary cause of effecting it.  (Page 310.)

Appeal from the District Court of Salt Lake County, Third District; *Hon. Wm. H. Bramel,* Judge.

Action by Theo. C. Brooks against George Q. Cannon Association.

Judgment for plaintiff.    Defendant appeals.

REVERSED and remanded, with directions to grant a new trial.

*Willey & Willey* for appellant.

*S. R. Armstrong* for respondent.

CORFMAN, C. J.

---

[1] *Young* v. *Whitaker,* 46 Utah, 474, 150 Pac. 972; *Douse* v. *Meehan,* 47 Utah, 628, 156 Pac. 920; *Butterfield* v. *Consolidated Fuel Co.,* 42 Utah, 499, 132 Pac. 559.

Plaintiff commenced this action in the district court for Salt Lake County, November 19, 1915, to recover a commission alleged to be due her for services rendered in the procurement of a loan for defendant.

The complaint, in substance, alleges: That in September, 1909, defendant employed the plaintiff to procure for it a loan of $90,000 on defendant's note secured by a mortgage on certain real estate situate in Salt Lake City, for which services plaintiff was to be paid a commission of two per cent. or $1,800; that in pursuance of the said employment the plaintiff induced and procured the Travelers' Insurance Company to make the said loan, and that the same was consummated on or about February 24, 1910; that said commission remains wholly unpaid; that January 19, 1914, plaintiff commenced an action in said court against the defendant for the recovery of said commission, which action failed otherwise than upon the merits.

The answer admits that a loan of $90,000 was made to defendant on or about February 24, 1910, by the Travelers' Insurance Company, but denies the employment of the plaintiff, or that the plaintiff induced or procured the Travelers' Insurance Company to make the said loan, or that the plaintiff's efforts were accepted by defendant, or that they consummated the said loan. It is also denied that the former action failed otherwise than upon the merits, and the statute of limitations is pleaded in bar of the present action.

Trial was to a jury. A verdict was returned in plaintiff's favor for $900 upon which judgment was entered. Defendant moved for a new trial and, the same being denied, brought this appeal.

It is contended by defendant that the evidence was insufficient to support the verdict and that the verdict was against law; also, that the trial court committed errors in the giving of certain instructions to the jury.

The testimony, in substance, shows beyond any dispute that during the summer and fall of 1909 the defendant was desirous of procuring a $90,000 loan for which it was willing to pay 5 per cent. per annum and secure the same by a mortgage upon real property situate in Salt Lake City. Some ef-

fort had then been made by the defendant to secure such a loan. The defendant had announced its purpose, generally, and divers persons were seeking to obtain the loan for the defendant. Willard T. Cannon, one of the directors of the defendant company, started negotiations with various individuals, one or two trust companies, two insurance companies, and several bankers. About this time the plaintiff called at the office of the defendant on Main street, Salt Lake City, and inquired if they desired a loan. Some person at the office advised her that they did, that he would call her by phone and have her come down and meet the Cannons (defendant). The following day, in answer to a phone call from the office, the plaintiff appeared, met a number of the Cannons, and was again advised that they desired the loan. The plaintiff was then handed a memorandum containing data and a brief description of the real property that could be offered as security. At that time the plaintiff was unable to place the loan for less than 5½ per cent. The defendant was unwilling to pay more than five per cent. The plaintiff avowed she would be able to make the loan at five per cent., and the defendant said to her, "All right, go ahead, and report as quickly as possible." Later, September 11, 1909, defendant procured a loan of $90,000 from Zion's Savings Bank of Salt Lake City, for three years at six per cent., secured by mortgage on its real estate. Later, on or about February 24, 1910, the defendant obtained a loan of $90,000 at five per cent from the Travelers' Insurance Company, and upon paying a bonus to Zion's Savings Bank the mortgage held by that bank was released.

After the first visit of the plaintiff at the defendant's office, in the summer or fall of 1909, the testimony is much in conflict as to what was said between the parties concerning the placing of the loan. The plaintiff testified that she advised the defendant, soon after her first visit at defendant's office, that she was able to obtain a loan of $90,000 at five per cent. interest for either five or ten years, and that they said to her, "Go ahead, go right along"; that she was told this by Willard T. Cannon, a director of defendant company; that she met and conversed with Willard T. Cannon concerning the

loan a number of times afterwards up until December some time. Using her exact language, she testified:

"Q. What was said between you at these different times? A. We just talked about the loan and how long it could be gotten for, and how much he wanted, and so on. Q. Was there anything said about how it was coming along—whether you were finding out or doing anything? A. Yes. He inquired if I had had word, and I told him yes, I had gotten word that the loan could be made, but it would take some time to close it. Q. Then you saw him on Main street, when he told you— A. Yes, about December, around the holidays, when he told me—tapped me on the shoulder and told me he didn't want the loan; that he already had gotten it, and I didn't need to trouble any more about it. I asked him where he got it, and he said Zion's Savings Bank."

The plaintiff further testified that she did not learn of the loan being placed by the Travelers' Insurance Company until in the following March or February, when she saw a statement to that effect in a newspaper, or some one came to her and told her while she was ill in a hospital. The plaintiff further testified that she personally did not make it a business to close up loans; that she negotiated loans by bringing the parties together. After plaintiff's first visits at the office of the defendant when she was advised that a loan was desired, she approached one La Blonde, who had an office in the Continental Bank building and whom she at that time believed to be an agent for the Travelers' Insurance Company, but who in fact was a real estate broker having no connection as agent or otherwise with the insurance company, and they together dictated a letter to the Travelers' Insurance Company, addressed either to its Chicago or New York office, concerning the loan, to which a favorable reply was received. As to the contents of either letter the record is not clear. The letters were not produced by the plaintiff at the trial, and, as we think, the reason assigned by plaintiff for not doing so was not very satisfactory.

However, in November, 1910, after the loan of $90,000, as before stated, had been placed by the defendant with Zion's Savings Bank, the testimony shows that Mr. Brigham T. Can-

non accompanied by La Blonde called upon W. H. Ellison, the general agent of the Travelers' Insurance Company at Salt Lake City, and announced that the defendant desired to procure a loan of $90,000. Thereupon Mr. Ellison personally took up the matter with the defendant, and the loan with the Travelers' Insurance Company of February 10, 1910, was finally consummated and the one from Zion's Savings Bank paid off and released. Mr. Ellison testified, and his testimony is not disputed, that the Travelers' Insurance Company had branch offices in both Chicago and New York; that its home, or general office, was in Hartford, Conn., but that the general agency for the placing of loans in Utah was with him at Salt Lake City. He further testified that any application for a loan from Utah made to either the Chicago or New York branch offices would not be considered by them, but probably would be referred by the Hartford general office to him. This witness further testified that he did not know Mrs. Brooks until after the loan was made to defendant; that her name was not mentioned in the transaction, and the only connection La Blonde had with it was that he and Brigham T. Cannon came to see him together; that La Blonde had nothing whatever to do with the transaction.

Mr. Brigham T. Cannon testified that he was not an officer of the Cannon company at the time the loan was considered and placed. He further testified that he, at the time, did not know that La Blonde had at any time communicated with any branch office of the Travelers' Insurance Company, or otherwise, concerning a loan for the defendant; that he alone assisted Mr. Ellison in negotiating the loan with the defendant and in securing the necessary data and information whereby it was finally consummated, and that he at the time advised the defendant that one-half of the commission was to be paid to him and one-half to Mr. Ellison, which was paid by defendant accordingly.

After a careful perusal of the entire transcript of the testimony in this case, we are convinced there is not one scintilla of evidence tending to show that the plaintiff was the procuring cause in obtaining the loan for the defendant with the Travelers' Insurance Company for which she          1, 2 seeks to recover a commission, nor was she in the slight-

est degree instrumental in bringing about the results finally obtained through the efforts of Brigham T. Cannon and the local agent, Mr. Ellison. Months had gone by without results after the plaintiff had called at the office of the defendant and asserted she could obtain the loan. The testimony is clear and uncontradicted that the only effort made by the plaintiff was that she and La Blonde communicated with either the Chicago or New York branch office of the Travelers' Insurance Company, neither of which offices had authority to consider or act upon an application for a loan in Utah. Had either of those offices referred their communications to either the general office at Hartford or the local agency at Salt Lake City, the plaintiff's claim of having procured the loan might be contended for with some degree of consistency. The undisputed testimony clearly shows, as we have pointed out, that neither the Chicago nor New York office, nor did the general office at Hartford, take any action whatever upon the correspondence of plaintiff and La Blonde by referring the matter to the general agent, Mr. Ellison, the only person authorized to transact the business. Absolutely nothing resulted from plaintiff's inefficient efforts and attempt to procure the loan, as we view the record. The plaintiff did not have the exclusive agency. No claim is made that she did have. Divers persons were seeking to place the loan for the defendant. In fact, after the loan was consummated in the manner heretofore pointed out, several who claimed the commission were denied, as was the plaintiff. It is elementary in this class of cases that in order for a broker to recover commissions his efforts must have been the procuring cause which resulted in the closing of the transaction upon which his claim is predicated. The rule is variously stated in the decisions of the courts and by the textwriters, but all are agreed that the efforts of the broker, in order to entitle him to a commission, must have been the efficient procuring or producing cause of the transaction relied upon by him. 2 Mechem on Agency, section 2435, p. 2010; 19 Cyc. 257; *Young et al.* v. *Whitaker*, 46 Utah, 474, 150 Pac. 972; *Douse* v.

*Meehan,* 47 Utah, 628, 156 Pac. 920; *Butterfield* v. *Consolidated Fuel Co.,* 42 Utah, 499, 132 Pac. 559.

It is next contended by defendant that the court erred in charging the jury as follows:

"You are instructed that if you find from the evidence that any officer of defendant, purporting or pretending to act for defendant, did employ plaintiff, and defendant did receive and accept the benefit of plaintiff's services, although you may find that plaintiff was not employed in a formal way by the defendant corporation, or by any one having authority from the defendant corporation to employ her in said matter, still said defendant is liable to plaintiff for the reasonable value of the services so rendered by her and accepted by the defendant."

It is true, no formal proof was made in the trial of the case that the plaintiff was employed by any authorized officer or agent of the defendant company. However, we think this instruction of the trial court correctly stated the law. Had the plaintiff rendered the services and the plaintiff accepted them knowingly, no matter by whom she was employed, the defendant would be liable. The difficulty arises from the fact that there is no proof that the plaintiff rendered any services that were effective in procuring the loan upon which she seeks to recover a commission.

The defendant further complains of the following instruction given by the trial court:

"If you find from a preponderance of the evidence that the defendant employed plaintiff to procure said loan, and that, pursuant to said employment, plaintiff had informed Travelers' Insurance Company that defendant wanted such loan on said property, and that defendant had knowledge that plaintiff was negotiating a loan, then you are instructed that if the plaintiff was not present when the proposed loan was consummated, if it was consummated, it was the duty of defendant reasonably to endeavor to ascertain from said Travelers' Insurance Company by whom it was first informed that said loan was wanted."

Counsel contends that in effect the court erroneously told the jury that it was the duty of the defendant, before con-

Appeal from Third District.

summating a loan with the Travelers' Insurance Company and paying a commission to some other broker than the plaintiff, to make inquiry as to which broker was the primary cause of the loan being made.

While the authorities are not altogether harmonious on this question, counsel's contention is supported by the opinion of this court in *Young* v. *Whitaker,* supra, which we think is right and must here control. Mr. Justice Frick, in the Young Case, speaking for this court and referring to the rule as laid down in *Vreeland* v. *Vetterlein,* 33 N. J. Law, 247, and other cases which he cites in the opinion to the same effect, says:

"Where, as in the case at bar, the brokers apply to the seller for authority to sell property to a purchaser they have in view, and the owner grants them permission to sell, and acts in perfect good faith in selling the property to a purchaser produced by one of the brokers, we cannot see under what rule of law or justice the owner may not safely pay the commission to the one who in fact produced the purchaser. *We further think that he is not required to first determine just what the other broker may have done in trying to effect a sale to the actual purchaser.*" (Italics ours.)

It necessarily follows from what has been pointed out that the judgment in this case must be reversed, and the cause remanded to the district court, with directions that a new trial be granted the appellant. It is so ordered. Costs to appellant.

FRICK, WEBER, GIDEON, and THURMAN, JJ., concur.