## VAN LEEUWEN v. HUFFAKER.

No. 4741. Decided August 9, 1929. (280 P. 235.)

442

*D. B. Hempstead,* of Salt Lake City, for appellant.

*Morgan & Huffaker,* of Salt Lake City, for respondent.

DILWORTH WOOLLEY, District Judge.

This is an action brought by plaintiff who was the assignee of the claim involved to recover a judgment against the defendant for a commission alleged to be due to a real estate broker one Ross C. Davis who plaintiff alleges brought about a sale and exchange of certain real property belonging to the defendant.

The case was tried to the court and a jury. At the close of plaintiff's evidence, the defendant moved for a judgment of nonsuit, which motion was by the court denied. After both sides had put in all their evidence, defendant moved for a directed verdict in his favor. This motion was granted, and the court directed the jury to return a verdict of no cause of action.

From the judgment on the verdict, and after his motion for a new trial had been overruled, plaintiff appeals. He assigns as error the order of the court in directing a verdict against him, the overruling of his motion for a new trial. He also complains of certain rulings of the trial court in relation to the admission of evidence.

It is not necessary to set out the pleadings or to refer to them particularly, except to state that defendant relied upon two defenses : (1) That the agent Davis had failed to procure a purchaser for the defendant's property who was ready, willing, and able to buy upon terms satisfactory to defendant; and (2) that the agency under which Davis pur-

ported to act had been revoked by defendant before sale of the property was made.

The trial judge directed the jury to return a verdict for the defendant because he thought the evidence was insufficient to go to the jury on the issue of whether or not the agent had procured a purchaser, ready, willing, and able to buy upon terms satisfactory to defendant. Counsel for respondent, in his brief, in stating his position, says:

"It is our contention that there was no substantial evidence, in fact no evidence at all, to the effect that appellant produced a person ready, able and willing to make the purchase. If there was such substantial evidence, then, of course, the appellant should prevail."

With this concession before us, it is unnecessary for us to lay down the rule of law as to when an agent is entitled to recover for a commission, or to refer to the cases cited by appellant in support of the rule. We shall therefore proceed at once to examine the evidence to determine whether or not it is sufficient to take the case to the jury upon plaintiff's theory. It is also unnecessary for us to consider the second defense, which is that the agency had been revoked.

Appellant produced evidence which showed that on February 19, 1927, respondent authorized Davis, who was a licensed real estate broker of this state, to sell certain real property which respondent owned in Salt Lake City, and for that purpose signed and delivered to him a written instrument addressed to Davis, in which, among other things, he states:

"If through your efforts, in whole or in part, I sell or trade the following described property, or any part thereof, at the price and terms hereinafter mentioned or otherwise, I agree to pay you as a commission 5 per cent of the first $——— and 5 per cent on the balance of the sale thereof. * * *

"This authority cannot be revoked except on giving ten days written notice to Ross C. Davis, terminating same."

Thereupon Davis proceeded to try to sell the property. He advertised it in the newspapers. He showed it to various

persons, and told others about it. He made one deal to ex-change it for real estate in Duchesne county, but that deal failed because it was not satisfactory to defendant. Then he introduced the defendant to one E. E. Waite, who had a fruit and berry farm in Weber county which he wanted to sell and which Davis had been trying to dispose of for him. Davis took Waite down to see defendant's property and took defendant up to see the fruit and berry farm in Weber county, and defendant examined that property. Davis got Waite to sign a contract to exchange the Weber county property for the Salt Lake City property provided defendant would pay Waite $1,500 cash to boot. This was not satisfactory to defendant because he did not want to pay the cash. The other terms were satisfactory to him. Defendant had a 5-acre tract of land, with a $500 mortgage on it, which he was willing to turn in on the deal in lieu of the cash if Waite would assume and agree to pay the mortgage. Waite would not accept this proposition because he wanted cash. That deal fell through, and negotiations between Huffaker and Waite ceased for the time being. These negotiations extended over the latter part of February and into the early part of March. Then both Huffaker and Waite entered into separate agreements to trade their respective properties to other persons, but later became dissatisfied with the trades and called them off. Waite went to California. Davis wrote to him to return to Salt Lake City, saying he thought he could get Huffaker to sign up on a proposition which Waite had left with Davis before going away. In the meantime they had both been trying to sell their properties through other real estate dealers. Finally Davis brought them together in his office, and they agreed to exchange their properties; Waite to deed his Weber county property to Huffaker subject to a mortgage of $3,800, and Huffaker to deed his Salt Lake City property to Waite subject to a $3,700 mortgage and the five acres of land subject to the mortgage of $500. Both expressed themselves as being willing to make the exchange upon these terms. How-

ever, Waite later refused to sign up and to complete the exchange through Davis' office because Davis insisted that Waite pay him a commission of $500 for selling the Weber county farm. Davis did not have any written authority to sell the Waite property, and therefore could not legally exact the commission. He insisted, nevertheless, that he was entitled to it. Waite refused to deal through Davis, and for that reason Waite and Huffaker went to another real estate office where a man named Epperson drew up the papers, and they exchanged their properties upon virtually the same terms that they had agreed to in Davis' office. There is a conflict in the evidence as to when the papers were signed in Epperson's office; Davis testifying that it was the next day after the last meeting between the parties in his office, and Huffaker giving it at a somewhat later date. There was first an exchange agreement drawn up and signed by Waite and Huffaker. Later they made their deeds to each other. The deeds from Huffaker to Waite are dated June 18, 1927. In the agreement which was finally signed by both parties, Huffaker promised to pay Davis a commission of $250, and Waite promised to pay a commission to Epperson who prepared the papers. Huffaker paid Epperson $100 as a commission for his part in the transaction, and Waite also paid him a commission. The evidence, without conflict, clearly shows that Waite would not sign a contract or complete the exchange transaction through Davis because Davis demanded a commission from him for selling the Weber county property; that he was ready, willing, and able to trade with Huffaker directly or through some other real estate agent, but he was not willing to trade through Davis; That he did in fact purchase or trade for the Huffaker property which had been listed with Davis upon terms which had been agreed to by both parties in Davis' office. There is also evidence in the record which goes to show that, after Huffaker and Waite had left Davis' office the last time they were there together, a few days elapsed before they appeared at Epperson's office and signed the contract, and

that on the day the contract was signed by both parties Waite appeared at Epperson's office, and at his suggestion Epperson went down to Huffaker's home and brought him back to the office, where the trade was consummated.

We think the jury would have had the right to conclude and find from the foregoing evidence that it was through Davis' efforts, in whole or in part, that the minds of Huffaker and Waite were brought together in the transaction and agreement by which Huffaker was enabled to sell or exchange, and in fact did sell, the property which he had listed with Davis. That, it seems to us, is a reasonable inference to be drawn from the facts stated and which were proved by substantial evidence. If the jury reached that conclusion, then plaintiff was entitled to recover. *Fritsch* v. *Hess,* 49 Utah 75, 162 P. 70; *Ogden Savings & Tr. Co.* v. *Blakely,* 66 Utah 229, 241 P. 221. That is not the only inference, however, which the jury might have drawn if the case had been submitted to them. They might have found that it was Epperson who brought the parties together in the sale, or that neither Davis nor Epperson was the moving cause of the transaction. The trial court therefore erred in directing the jury to return a verdict for defendant and in overruling the motion for a new trial. *Green* v. *Higbee,* 66 Utah 539, 244 P. 906; *Cottam* v. *O. S. L. R. Co.,* 55 Utah 330, 187 P. 827; *Chadwick* v. *Beneficial Life Ins. Co.,* 54 Utah 443, 181 P. 448; *Stam* v. *Ogden Packing & Provision Co.,* 53 Utah 248, 177 P. 218; *Peterson* v. *Bullion Beck & C. Min. Co.,* 41 Utah 364, 126 P. 310. For these errors the judgment will have to be reversed and the cause remanded for a new trial.

In support of the contention that there was no evidence produced at the trial sufficient to take the case to the jury upon plaintiff's theory, counsel for respondent cites the following: *Douse* v. *Meehan,* 47 Utah 628, 156 P. 920; *Young* v. *Whitaker,* 46 Utah 474, 150 P. 972; *Brooks* v. *Cannon,* 53 Utah 304, 178 P. 589, and *Butterfield* v. *Con. Fuel Co.,* 42 Utah 499, 132 P. 559. We have no fault to find with any of

those cases. They all seem to have been correctly decided upon their respective records. But an examination of them will disclose that they are all distinguishable from this case upon the facts.

The trial court sustained an objection to the introduction in evidence of Plaintiff's Exhibit C. This was a contract signed by one Woodward and which defendant had also signed and then immediately afterward revoked his signature by drawing a pen through his name providing for an exchange of the defendant's property for land in Duchesne county. It was admitted by appellant that this deal was never consummated, and that it was subject to Huffaker's approval which was never given. Appellant claims that the exhibit was admissible to show what Davis had done toward securing a purchaser for respondent's property. The objection was properly sustained.

The court also sustained an objection to the introduction in evidence of Plaintiff's Exhibit D. This is a contract in writing, procured by Davis, signed by Waite, dated February 26, 1927, in which Waite agreed to exchange his Weber county property for the defendant's property listed with Davis with $1,500 cash difference to be paid to Waite by Huffaker. But Huffaker did not sign this contract nor agree to pay $1,500 cash difference on the exchange of properties. What he subsequently did was to deed to Waite five acres of land in lieu of the $1,500 cash which Waite demanded. The objection to this exhibit was also properly sustained.

The court permitted defendant, over plaintiff's objection that it was hearsay, to testify to a conversation had between defendant and Waite at a dance hall in the absence of Davis. The objection was well taken and should have been sustained. But the matter related by the witness was of such little consequence, in view of the undisputed facts in the case, that this court would not be justified in reversing the judgment because of this error.

The written appointment under which Davis was acting in attempting to sell Huffaker's property contained this provision: "This authority cannot be revoked except on giving ten days written notice to Ross C. Davis terminating the same." The trial court, nevertheless, over plaintiff's objection that it was incompetent because it tended to vary the terms of a written intsrument, permitted Huffaker to testify that at the dance hall he said to Davis: "Well, I guess the deal is off between you and me." And, further, on another occasion at Davis' office: "I told Mr. Davis at that time, I said 'if you can't put it through I am going to give it to somebody else.' I asked him if there was any need of giving the ten days' notice in writing, or would it do just that way. He said, 'There is no need of giving it in writing if we can't get it through; but before you do that come down and see him tonight and see what he says. May be he will come to our terms.' " The defendant offered this evidence as tending to show that Huffaker had revoked the appointment of Davis as his agent to sell the property before the sale was actually made. This ruling is assigned as error. We think the evidence was admissible for that purpose because the provision of the written authority requiring the notice of revocation to be in writing was for the benefit of Davis and might be waived by him.

The defendant had been permitted by the court to testify in his defense that he valued his Salt Lake City property at only $12,000. He listed it with Davis at a value of $15,000 and had testified as to what was said about that matter when the listing was made, suggesting that Davis had proposed that the price be placed at $15,000 on an exchange for other property. In rebuttal the plaintiff called Davis as a witness and propounded to him this question: "What valuation did Mr. Waite place on his Cozy Dale farm at Ogden?" This was objected to as not being proper rebuttal, and the objection was sustained; the ruling being assigned as error. There was no error in sustaining

the objection to the question, although the objection did not state all the grounds upon which objection might properly have been made. It called for a statement of a mere conclusion. If the examiner intended thereby to elicit a statement made by Waite to Davis upon the subject of the value of the Ogden property, then it was hearsay as to Huffaker, being made in his absence. If the value of the Weber county property was important to plaintiff in rebuttal as bearing upon the value of the Huffaker property, upon which plaintiff's commission was to be computed if he was entitled to anything, the plaintiff did not go about to prove it in the right way.

Because of the error of the trial court in instructing the jury to return a verdict in favor of the defendant, the judgment ought to be reversed and the cause remanded for a new trial. It is so ordered. Appellant to recover his costs.

CHERRY, C. J., and ELIAS HANSEN and FOLLAND, JJ., concur.

EPHRAIM HANSON, J., being disqualified, did not participate herein.

STRAUP, J. I concur in the order reversing the judgment and in remanding the cause for a new trial. I do not concur in the ruling that the testimony with respect to Exhibit D was properly excluded. I think it had a direct bearing on what Davis, the plaintiff's assignor, did in bringing Waite and Huffaker together and which resulted in an agreement between them. Though Huffaker did not agree with the contract as first signed by Waite, yet, when he thereafter bargained and negotiated with him, which did result in an agreement between them, the services of Davis nevertheless may be regarded as the instrumentality or means of bringing the parties together and the agreement as finally entered into as the result of such service. In considering and determining that, I think the proffered evidence admissible.

Neither do I concur in the holding that the loose talk at

the dance hall was properly received in evidence as tending to show a revocation of the authority of Davis. Though the written contract between Huffaker and Davis provided that the authority of the latter to act for the former could not be revoked except on written notice, still, let it be assumed a revocation of the authority and a waiver of written notice could be shown by parol provided the parties treated the authority as having been revoked and Davis as no longer acting for Huffaker. But there was no testimony adduced or offered to the effect that the parties regarded or treated the authority as having been revoked, or that contractual relations either expressly or impliedly had been put at an end. I think the record fairly shows the contrary, and that Davis after the dance talk continued to act for Huffaker as he had theretofore. In such view I think the testimony objected to was irrelevant. Further, the testimony, if it can be said it tended to show some sort of revocation, shows only a conditional revocation without proof of the condition or of the happening of the event upon which the revocation was based. Again, a principal, after services have been rendered by his agent, may not, by revoking the agent's authority, take the fruits or benefits of his services and then refuse to compensate him for them. I think the testimony with nothing more was irrelevant and did not tend to prove a revocation or a waiver of notice.