Farrar v. Brodt.

## J. HAMILTON FARRAR
### v.
## CHARLES BRODT.

*Sales—Real Property—Commission—Recovery of—Agency.*

In an action brought to recover commissions alleged to have been earned in making a sale of certain real estate in pursuance of authority in writing, this court declines, in view of the evidence, to interfere with the judgment for the defendant.

[Opinion filed May 28, 1890.]

APPEAL from the County Court of Cook County; the Hon. RICHARD PRENDERGAST, Judge, presiding.

Messrs. C. A. ALLEN and C. F. LOESCH, for appellant.

Messrs. BOTTUM & SWARTZ, for appellee.

GARNETT, J.    This is an action of assumpsit brought by appellant to recover commissions for sale of real estate, which he alleges he made for appellee in pursuance of this written authority:

"CHICAGO, December 10, 1887.

"J. H. FARRAR,

"*Dear Sir:*—You are hereby given the exclusive agency for the sale of my property, 640 Fullerton avenue, together with the ground, 30 x 174 feet to the alley, for the sum of $10,250 or $10,000 net.    The above agency is given to February 1, 1888.

CHARLES BRODT."

The property was conveyed to W. P. Dunn, by Brodt, through J. P. Sayer & Co., real estate brokers, about March 21, 1888.    The price paid by Dunn was partly money, and the rest property.

Soon after the authority to sell was given to Farrar, he approached Dunn with an offer to sell the premises to him, but nothing definite was arranged between them.    Dunn made no bid prior to February 1, 1888, nor does it appear that Farrar informed him of the price that Brodt had fixed on the property.    Between the 1st and 13th of February, Dunn did make Farrar a conditional offer, but the condition was never complied with, nor was Brodt obliged to pay any attention thereto.    Whatever there was between Farrar and Dunn, it certainly advanced no further than mere treaty.    Farrar testified that Dunn was ready to pay $10,250 for the property on February 21, 1888.    That seems to have been a mere conclusion of Farrar without any showing as to a promise or bid from Dunn.    But if he was ready to do so, his readiness was clearly brought about by Sayer & Co., with whom alone he was then negotiating.

Farrar also testified that Brodt agreed to continue the exclusive character of the agency after February 1st, which Brodt emphatically denied, but testified that he told Farrar he would not longer commit himself to any one man.

The owner was faithful to his promise of exclusive agency until the time expired, and then employed Sayer & Co. Unless the judge before whom the case was tried, without a jury, was bound to believe Farrar in preference to Brodt, no ground for recovery can be easily suggested. The agents who succeeded in disposing of the premises received no information or assistance from Farrar. They were acquainted with Dunn through other transactions, and brought the property to his notice after hearing from a stranger to Farrar, that the owner wished to sell.

It is aside from the inquiry to ask why Sayer & Co. succeeded in selling while Farrar failed. Fair competition with any person licensed by the owner to make the sale was a hazard to which Farrar was exposed the moment his exclusive employment terminated.

His rivals seem to have possessed the most persuasive ways in this instance, and as Brodt appears to have remained neutral between them, he can not be compelled to pay the unsuccessful as well as the successful agents. Vreeland v. Vetterlein, 33 N. J. L. 247; Mechem on Agency, Sec. 969. His action was entirely fair, open and free from collusion and he should not be punished with a double liability. The propositions of law held by the court are not in conflict with the judgment or the views here announced.

The judgment is affirmed.

*Judgment affirmed.*