EDWIN LATSHAW *et al.* v. O. S. MOORE *et al.*

1. REAL-ESTATE AGENT—*When Entitled to Commission.* Real-estate brokers employed to procure a purchaser or a trade for property for a specified commission are not entitled to recover the commission agreed upon unless they were the primary, proximate and procuring cause of the sale or exchange which was made.

2. ———— *Not Entitled to Commission.* Where such brokers introduce another broker to the vendor as a customer, but the negotiations between them are unsuccessful, and afterwards the vendor in good faith employs the broker so introduced to him to procure a purchaser, and he thereupon produces a purchaser, and is the proximate, efficient and procuring cause of the sale and exchange of the property, he would be entitled to the commission, rather than the brokers originally employed and who introduced him to the vendor.

3. VERDICT, *Not Sustained by Findings.* Where the material findings of a jury are contradictory and insufficient to sustain the general verdict, the judgment based on the general verdict will be reversed.

*Error from Ellsworth District Court.*

ACTION by *Moore Brothers* to recover from *Latshaw Brothers* $500 as commission for the sale of a gristmill owned by the latter, and situated at Wilson. It was alleged that in May, 1887, Latshaw Brothers entered into a verbal agreement with Moore Brothers to pay them the commission mentioned if they would procure a sale of the mill property or a trade which they would accept, and that in pursuance of this agreement they procured a purchaser in the person of Oscar Voightlander, who consummated a purchase or trade for the mill in June, 1887. The defense of Latshaw Brothers against this claim was that Moore Brothers were not instrumental in finding the purchaser, but that other agents employed by the former, namely, Toole & Emerson, procured the purchaser and the trade which was ultimately accepted. The jury to whom the cause was submitted returned a general verdict in favor of the Moore Brothers, and with it the following special findings of fact:

*By Plaintiffs.*

"1. Did the Latshaw Brothers employ Moore Brothers to sell or trade their mill property in the spring of 1887? A. Yes.

"2. What sum did the Latshaw Brothers agree to pay Moore Brothers in case Moore Brothers procured a trade which the Latshaw Brothers would accept? A. $500.

"3. Who introduced Emerson to Latshaw Brothers? A. Moore Bros.

"4. Did Moore Brothers find and introduce a person to the Latshaw Brothers, and was the trade made as a result of this introduction? A. Yes.

"5. Did O. S. Moore assist in the final consummation of the trade? A. Yes.

"6. Was a trade for the mill property finally consummated, and, if so, when? A. Yes; in June, 1887.

"7. If you answer the sixth interrogatary in the affirmative, were the Moore Brothers the procuring cause of such trade? A. Yes.

*By Defendants.*

"1. Were Toole & Emerson, in the year 1887, real-estate agents in Ellsworth county, Kansas? A. Yes.

"2. Did Toole & Emerson, as real-estate agents, and for the purpose of obtaining a purchaser for the property of the defendants, Latshaw Brothers, introduce the said Latshaw Brothers to one Oscar Voightlander? A. Yes.

"3. Prior to said Toole & Emerson introducing the said Oscar Voightlander to the Lawshaw Brothers, did the plaintiffs, Moore Brothers, have any knowledge that Oscar Voightlander desired to purchase or trade for the property of the defendants? A. No.

"4. Did James S. Emerson, of the firm of Toole & Emerson, negotiate and make the trade for Latshaw Brothers with Oscar Voightlander? A. Partly.

"5. Is it not a fact that Moore Brothers introduced James S. Emerson, of the firm of Toole & Emerson, to Latshaw Brothers, at request of Emerson, said Emerson being at the time a real-estate agent? A. No.

"6. Did Emerson, at any time prior to taking Oscar Voightlander to Wilson, Kas., have any talk with Moore Brothers in reference to any exchange of any kind? A. Yes.

"7. If there was a trade talked of between Emerson and the Latshaws at the time Emerson went to Wilson, did the trade which was then talked of fall through? A. Yes.

"8. If you answer the above question in the affirmative, after the said trade fell through, did the Latshaw Brothers and Toole & Emerson enter into a contract other than the contract entered into when Emerson first met the Latshaws at Wilson, Kas., and for the purchase of the property of Voightlander? A. Yes.

"9. Did Moore Brothers procure a trade for the mill that was accepted by Latshaw Brothers, or was it Toole & Emerson who procured the trade? A. Moore Brothers.

"10. Is it not a fact that all that was done toward procuring a trade on the part of Moore Brothers was in drawing up a contract between the parties, after Emerson had made the trade, and introducing Emerson as a real-estate agent to Latshaw Brothers, some time prior to the trade being made, the said Emerson at the time of the introduction representing that he had property of his own, or of Toole & Emerson, which he desired to trade for mill property? A. No.

"11. If you answer the above question in the negative, then state what acts, if any, Moore Brothers did, except as stated in the above question, to procure the trade. A. The Moore Brothers performed the first act, and were instrumental in satisfying Voightlander with the value of the property to be traded for, and drawing up the contract which closed the trade.

"12. Were Toole & Emerson the primary, efficient and procuring causes of the trade or exchange of property between Oscar Voightlander and Latshaw Brothers? A. No.

"13. Did the plaintiffs procure Oscar Voightlander as a purchaser for the property of the defendants? A. Indirectly they did.

"14. Were Toole & Emerson, or either of them, in any manner the agents or representatives of Moore Brothers in making and effecting an exchange of property between Latshaw Brothers and Oscar Voightlander? A. No.

"15. Did Moore Brothers, at the time of introducing Toole & Emerson, or either one of the firm of Toole & Emerson, to Latshaw Brothers, introduce said Toole & Emerson or Emerson as a customer who contemplated making a trade? A. Yes.

"16. Did the trade, if any, talked about between Emerson, Moore Brothers, and Latshaw Brothers, when Emerson was first introduced to Latshaw Brothers, fall through? A. Yes.

"17. After the trade mentioned in preceding question fell through, did Latshaw Brothers consult with Emerson or

Toole & Emerson, as real-estate agents, to solicit them to make a trade for them? A. Yes.

"18. By reason of the consultation of Latshaw Brothers with Emerson or Toole & Emerson, were Latshaw Brothers and Oscar Voightlander brought into communication with each other? A. Yes.

"19. By reason of Oscar Voightlander and Latshaw Brothers being brought together by Emerson or Toole & Emerson, was the trade made between Latshaw Brothers and Voightlander? A. Yes.

"20. Was Emerson or Toole & Emerson the direct and immediate and efficient cause of the trade being made with Voightlander and Latshaw Brothers? A. No.

"21. Did Emerson or Toole & Emerson succeed in effecting the trade between Voightlander and Latshaw Brothers? A. With the assistance of Moore Brothers.

"22. Did Emerson or Toole & Emerson bring the minds of Voightlander and Latshaw Brothers together in effecting the trade or exchange of properties? A. With the assistance of Moore Brothers."

Latshaw Brothers allege error, and claim that the verdict is unsupported by the testimony, is contrary to law, and that the special findings are inconsistent with each other and with the general verdict.

*Ira E. Lloyd*, for plaintiffs in error:

1. The plaintiffs claim that the verdict is contrary to the evidence. The contract is that Moore Brothers should find a purchaser or trade that Latshaw Brothers would accept. From the facts found by the jury, it is clear that Moore Brothers did not find a purchaser or trade that Latshaw Brothers would accept.

2. The plaintiffs claim that the verdict is contrary to law. The facts as found by the jury will not uphold a verdict for Moore Brothers. Moore Brothers did not find a purchaser or trade. Toole & Emerson did. Moore Brothers were not the cause of Toole & Emerson finding this purchaser, because the jury find that the trade which Moore Brothers brought Toole & Emerson and Latshaw Brothers together to make entirely fell through; that after it so fell through Toole & Emerson, as

real-estate agents, were employed by defendants below and brought them and Voightlander into communication, and that said communication resulted in the trade.   The proximate, direct and moving cause was, therefore, Toole & Emerson, who acted independently of Moore Brothers in all respects as far as the trade was concerned, and especially so far as finding the purchaser, Voightlander, is concerned.   For a decision in point on a case parallel in principle, see *Armstrong v. Wann*, 29 Minn. 126.   See, also, *Wylie v. National Bank*, 61 N. Y. 415; *McClave v. Paine*, 49 id. 561; *Smith v. McGovern*, 65 id. 574.

*C. J. Evans*, for defendants in error:

Defendants in error claim that the verdict and special findings are fully sustained by the evidence.   The jury were the judges of the credibility of the witnesses, and, on all the testimony in the case, were fully justified in looking with considerable suspicion on much of the testimony of the Latshaws. That they did so is evident from all the special findings in the case.

The verdict of the jury is not contrary to law.   The contract was that the Moore Brothers should have $500 commission if they would procure a sale or trade of the mill property which would be accepted by Latshaws.   The jury evidently decided the case on the theory that Moore Brothers assisted in finding a purchaser and in the negotiations which led to the consummation of the trade; that Moore Brothers had been employed to do this by the Latshaws, at an agreed commission of $500, only a short time before this trade was made; that this employment had never been revoked; that the Latshaws availed themselves of the services of the Moore Brothers in making the trade, and that the trade was made and consummated when the written contract was drawn up by O. S. Moore, on June 8, 1887, between the Latshaws and Oscar Voightlander. See *Frances v. Baker*, 47 N. W. Rep. 453; *Scott v. Patterson*, 13 S. W. Rep. 420; *Durkee v. Gunn*, 41 Kas. 496; *Plant v. Thompson*, 42 id. 664; *Carter v. Webster*, 79 Ill. 435.

See, also, *Betz v. Land Co.*, 46 Kas. 45, and authorities therein cited; *Stephens v. Scott*, 43 id. 285; 14 Pac. Rep. 496; 3 N. Y. S. 696; 8 id. 666; 9 id. 273; 14 Daly, 480.

The opinion of the court was delivered by

JOHNSTON, J.: It is conceded that Moore Brothers were employed as brokers to negotiate a sale or exchange of the mill property, and, according to their testimony, the terms of the verbal agreement upon which they recovered in this action were, that Latshaw Brothers would pay them $500 as commission if they would find a purchaser or trade for the mill which Latshaw Brothers would accept. They are not entitled to recover upon this contract unless they were the efficient, immediate and procuring cause of the sale. Upon this question the special findings are inconsistent, and insufficient to sustain the general verdict. After Moore Brothers had been employed to negotiate a sale or exchange of the mill property, Emerson, of the firm of Toole & Emerson, inquired of the Moore Brothers if they had any property to trade for land. He was told of the Latshaw mill property, and was subsequently introduced to the Latshaws as a customer. Some negotiations were had between the Latshaws and Emerson with reference to an exchange of the mill property for a body of land owned by Toole & Emerson, known as the Loomis land. After looking the mill over, Emerson returned to his home at Ellsworth, and a few days later one of the Latshaws went to Ellsworth with a view of looking at the Loomis land, and closing up the trade. He was then informed by Emerson, that upon consultation with Toole, his partner, they had determined that they did not desire to trade for mill property, as they had no knowledge of the value of such property, nor of the business of milling. This appears to have ended the transaction. Toole & Emerson were real-estate agents, and the Latshaws subsequently employed them to find a purchaser for the mill property. Some time afterward, Toole & Emerson ascertained that Voightlander had a tract of land which he wished to

1. Real estate agent—when entitled to commission.

dispose of, and Latshaw was taken to see the same, when he met Voightlander for the first time. Afterward, Emerson took Voightlander to the town of Wilson to see the mill, and while Voightlander, Emerson and Latshaws were examining the mill, they were joined by O. S. Moore, of the Moore Brothers. He appeared to be interested in the negotiations, and at the close of the same wrote out the contract for the exchange of property that was subsequently signed by the parties.

In this state of the case, how can it be said that Moore Brothers were the efficient, immediate and procuring cause of the sale and exchange of properties? They did not introduce nor bring together the vendors and purchaser, and the negotiations which resulted in the exchange were instituted by Toole & Emerson. It is admitted that the latter were not the agents of Moore Brothers, and it further appears that Moore Brothers did not have the exclusive agency for the sale of the mill property. It was competent for Latshaw Brothers to employ other brokers to dispose of their mill, so long as they acted openly and in good faith with Moore Brothers. It is true that Emerson was introduced to the vendors by Moore Brothers, but he appears to have been introduced as a customer, and not as the agent of another. The negotiations which the parties had in mind at that time related to an exchange of the Loomis land for the mill, but they were unsuccessful. The Voightlander property does not appear to have been within the knowledge of any of them at that time. Moore Brothers had no knowledge of Voightlander until he was brought to the mill by Emerson; and there is testimony in the record to the effect that, when the negotiations for the Loomis land were abandoned, even Toole & Emerson did not know that Voightlander had land he wished to sell or exchange for other property. If Toole & Emerson had been the agents of Moore Brothers, or if the latter had introduced Emerson to the vendors as the agent of Voightlander, there would be some reason to say that the vendors and purchaser had been brought into communication through the agency of Moore Brothers, and that

the exchange of property was the proximate result of their endeavors; but the record before us does not satisfactorily sustain either of these views. The mere introduction of the vendors to another broker is insufficient to entitle them to the agreed commission. As has been seen, he was introduced as a customer, and the negotiations instituted were unsuccessful. That introduction did not preclude the employment in good faith of that broker to find a purchaser. If he produced the purchaser, and was the proximate and procuring 2. Not entitled to commission. cause of the sale and exchange, he would be entitled to the commission, rather than the broker first employed. (*Eggleston v. Austin,* 27 Kas. 245; *Holly v. Townsend,* 2 Hilt. [N. Y.] 34; *Sibbald v. Iron Works,* 83 N. Y. 378; *Ward v. Fletcher,* 124 Mass. 224; *Livezy v. Miller,* 61 Md. 336; *Vreeland v. Vetterlein,* 33 N. J. L. 247; *Wylie v. National Bank,* 61 N. Y. 415; *Earp v. Cummins,* 54 Pa. St. 394; *Lipe v. Ludewick,* 14 Ill. App. 372; Mech. Ag., § 969.

In some of the answers returned by the jury, they found that Moore Brothers were the proximate and procuring cause of the trade, while in others they clearly state that Toole & Emerson produced the purchaser, and the Moore Brothers were only indirectly instrumental in procuring such purchaser. In still others, they find that Toole & Emerson brought the vendors and purchaser into communication with each other, and by reason of their efforts in this respect the trade was effected. This is followed by findings that neither Emerson nor Toole & Emerson were either the direct or efficient cause of the trade being made.

If Moore Brothers were employed to assist in making a sale and exchange, then they might be entitled to the commission, or if, after the purchaser was produced by Toole & Emerson, the vendors had employed Moore Brothers to assist in consummating the sale, they would be entitled to such compensation as their services were worth. But this was not the

16—53 KAS.

contract which was pleaded, nor the one upon
which a recovery was had.    The special find-
ings are contradictory and fail to support the
verdict and judgment which have been given.

**3. Verdict, not sustained by findings.**

The judgment will be reversed, and the cause remanded
for another trial.

All the Justices concurring.