CHARLES E. HIGINBOTHAM ET AL., APPELLANTS, V. JOHN McKENZIE, APPELLEE.

FILED JANUARY 9, 1911.   No. 16,259.

Brokers: SALE OF LAND: RIGHT TO COMMISSION. When the owner of real estate authorizes several respective brokers or agents to sell or exchange the same, but gives neither an exclusive agency, the agent or broker who actually effects the sale or exchange is entitled to the commissions. The agent under such contract who negotiates with a purchaser, but does not effect a sale, cannot recover commissions.

APPEAL from the district court for Adams county:
GEORGE F. CORCORAN, JUDGE.  *Affirmed.*

*Tibbets, Morey & Fuller,* for appellants.

*R. A. Batty, contra.*

SEDGWICK, J.

These plaintiffs began this action against the defendant
in the district court for Adams county to recover com-
missions upon the sale of the defendant's ranch.  The
trial resulted in a verdict in favor of the defendant, and
the plaintiffs have appealed.

In October, 1906, Thomas M. Jones, one of these plain-
tiffs, who was then residing at or near Hastings, met the
defendant at Madrid, near which town the defendant's
ranch was situated, and told the defendant his business,
which he testified was "handling western Nebraska land,
selling land," and the defendant thereupon told him that
he wanted to sell his ranch, and wrote out and signed
the memorandum which is relied upon by the plaintiffs
as a contract of agency authorizing them to sell the de-
fendant's ranch.  This memorandum contained a some-
what detailed description of the ranch, which consisted
of about 1,520 acres, describing quite fully the improve-
ments on the ranch, and after the description were the
following words: "$10 an acre, $\frac{1}{2}$ cash, balance to suit
purchaser, $12\frac{1}{2}$ an acre, if trade.  Commission 5 per cent."
—signed by John McKenzie.  This memorandum was de-
livered to Mr. Jones on the 9th day of October, 1906,
and was signed by him.  The other two plaintiffs were
at that time engaged in real estate business in the firm
name of Higinbotham & Pickens, and the evidence shows
that soon afterwards Mr. Jones entered into an arrange-
ment with Higinbotham & Pickens whereby the three
became joint owners of this contract, and perhaps of
other business of a similar nature.  Soon afterwards Mr.

McKenzie was at Hastings, and Mr. Jones took him to the livery barn of Groenwald & DeMuth, in Hastings, and introduced the defendant to one of the partners, and proposed a trade of the livery barn and stock for the ranch of defendant. The defendant also placed the ranch for sale with A. C. Tompkins & Company, a real estate firm of Hastings, and also with other firms in Hastings. Afterwards the ranch was traded for the barn and stock, and the defendant insists that the trade was made through the said firm of A. C. Tompkins & Company, and that they were entitled to the commissions, and it appears from the evidence that before the commencement of the suit the defendant had paid the said firm of Tompkins & Company a commission of $950 for their services in making the exchange. The plaintiffs insist that the exchange was made through their efforts, and that they are therefore entitled to the commission for which they have sued. Mr. Jones testified that, after the interview which he procured between the defendant and the owners of the livery barn, he several times on different occasions interviewed the owners of the barn, and explained the advantages of the defendant's ranch and otherwise endeavored to bring about the exchange.

The theory of the plaintiffs as expressed in their brief is as follows: "If our theory of the law is correct, all we had to prove was the existence of a valid contract of brokerage, the bringing of the parties together, during the period of the employment, and the fact that the parties did actually make the deal negotiated by plaintiffs." We cannot agree to this theory as applied to the facts in this case. The purpose of the act of the legislature requiring contracts of agency for the sale of land to be in writing was to prevent controversies so far as practicable in regard to those matters. Cases frequently arose in which it was difficult to determine whether there was in fact any contract of agency between the parties, and, if there was, what the agreement of the parties was in regard to the commissions allowed. The disputes that

arose in regard to the authority of different agents to act in the matter, and in regard to their compensation, led to many law suits and sometimes even to perjury. To avoid these evils the law requires that the authority of the agent shall be in writing signed by both parties, and that the writing shall describe the land and determine the commissions to be allowed "in case of sale by the broker or agent." Comp. St. 1909, ch. 73, sec. 74. The owner of the land may give a broker or agent the exclusive right to negotiate a sale or exchange, and, if he does and the sale or exchange is negotiated according to the terms of the contract of agency, the agent or broker is entitled to the agreed commissions if he procures a purchaser "able and willing to purchase," even if the owner or some other person should interfere and complete the transaction. The memorandum in this case, even if it should be considered a contract in compliance with the statute, gives no exclusive right to these plaintiffs as agents. A. C. Tompkins & Company had a similar memorandum, as did also others, and each had equal authority to effect a sale. When the transaction was completed, the agent so authorized who had endeavored to accomplish such result, and who had in fact effected the sale, was entitled to the commission. Which of the agents did in fact effect the exchange? Under the circumstances in this case this is a difficult question to answer. If there is blame for this uncertainty it rests with the plaintiffs as well as the defendant. They might have insisted upon an exclusive agency, and were not obliged to devote their time and efforts to the undertaking without such contract. Perhaps the efforts of both agents contributed to the result. If so, it may be said that both have earned a commission, but surely the defendant is not liable for a double commission. No commission was due unless a sale or exchange was made, and the only way to determine which of the contending agents is entitled to the commission is to ascertain which effected the sale or exchange. This difficult duty has been per-

formed by the jury, and, if the question was regularly submitted, the verdict must stand.

A number of instructions were requested by plaintiffs, four of which were given and seven refused. For the most part the refused instructions were based upon the theory advanced by plaintiffs that has been stated, and cannot be sustained. One request was to instruct a verdict for the plaintiffs. Another was to the effect that the plaintiffs might act as agents for both parties in the transaction, and that under the issues in this case that would not prevent their recovery. Of course, one cannot act for conflicting interests in a transaction, unless both parties know that he is so acting and consent thereto. We cannot see that the court erred in refusing instructions asked by plaintiffs.

The eighth instruction given by the court is complained of. The first part of this instruction states the question to be determined correctly. The instruction then says: "If the jury find from the evidence that the plaintiffs, or any of them, procured for the defendant a purchaser or purchasers for his property, who were ready, able and willing to purchase, or trade for, the property at the price and upon the terms named by the owner, then the plaintiffs are entitled to recover, and the amount of your verdict will be, as shown by the undisputed evidence in this case, the sum of $950." This language is inconsistent with a later clause in the instruction, and the error in this part of the instruction, if any, is prejudicial to the defendant and not to the plaintiffs. The following instruction is complained of: "The jury are instructed that, where several brokers are openly employed to effect the sale of the same property, the entire duty of the seller is performed by remaining neutral between them, and he has the right to make the sale to a buyer produced by either or any of them without being called upon to decide between these agents as to which of them was the primary cause of the purchase." This instruction is borrowed from the syllabus in a similar case in New Jersey,

*Vreeland v. Vetterlein,* 33 N. J. Law, 247. We think it correctly states the law as applicable to the facts in this case. Mr. Chief Justice Beasley's discussion in that case of the principles of law upon which the decision depends is applicable here.

The case seems to have been fairly submitted to the jury, and the judgment of the district court is

AFFIRMED.