CHESTER R. HILLYER, APPELLEE, V. WILLIAM P. STANSBERY, APPELLANT.

FILED FEBRUARY 2, 1921.    No. 21316.

1. **Brokers: COMMISSIONS.** Where the undisputed evidence shows that a real estate broker, without the knowledge of his principal, was acting in the interest of the purchaser of the land instead of in the interest of his principal, the broker is not entitled to any commission. *Campbell v. Baxter*, 41 Neb. 729, and *Strawbridge v. Swan*, 43 Neb. 781, followed.

2. ——: ——. If, in case of a claim of a real estate broker for commission on the sale of land, the undisputed evidence shows that neither the broker nor any one for him effected the sale or contributed to that result, the broker cannot recover any commission.

3. ———: ———: EVIDENCE. Evidence examined, and *held* that the broker was acting in the interest of the purchaser, and that the broker did not effect the sale or contribute to that result, and was entitled to no compensation.

APPEAL from the district court for Keith county: HANSON M. GRIMES, JUDGE. *Reversed and dismissed.*

*Halligan, Beatty & Halligan,* for appellant.

*H. A. Dano,* contra.

CAIN, C.

The plaintiff, Chester R. Hillyer, brought this action against the defendant, William P. Stansbery, to recover the sum of $2,000 as commission for the sale of defendant's 2,400-acre ranch in Keith county, Nebraska. The action was based upon a letter or contract as follows:

"948 E. 3d Street, Long Beach, Cal. Feb. 12-18.

"Mr. Hillyer, Sir: Received your letter in regard to selling the ranch, if you can find anybody who is willing to pay fourteen dollars per acre for the 24 hundred acres north of Lemoyne, you may sell it & I will give you two thousand dollars commission. Yours truly, W. P. Stansbery."

In his petition plaintiff alleged, among other things, that he had accepted the terms of sale and commission as set out in the above letter and proceeded to find a purchaser for the ranch. He also alleged in his petition that the Boyd Land Company of Ogalalla, Nebraska, composed of R. W. Boyd and A. R. Thompson, exchanged lists of real estate held for sale by said parties, and had an oral agreement for the equal division of commissions earned on the sale of the land in the lists exchanged, and that said A. R. Thompson found a purchaser for defendant's lands on or about June 7, 1918, in the person of Frank Harris. The answer admitted the writing of the letter above set out, denied that there was any agreement between plaintiff and the Boyd Land Company, denied that defendant ever authorized plaintiff to employ said Boyd Land Company as

defendant's agent, and denied that plaintiff ever procured a purchaser for defendant's land, or was instrumental in the sale thereof, and otherwise denied generally the allegations of the petition.

Trial was had to the court and jury, which resulted in a verdict and judgment in plaintiff's favor for $1,500. Defendant appeals, assigning as error that the verdict is contrary to and is not supported by any evidence, and that it is contrary to the instructions of the court and to law.

The errors assigned require an examination of the evidence, and in doing so we shall observe the settled rule in this state that on conflicting evidence the verdict of a jury cannot be set aside unless it is manifestly wrong, and that all reasonable inferences from the evidence are to be resolved in favor of the plaintiff.

At the time of writing the letter on February 12, 1918, the defendant Stansbery was in Long Beach, California, where he remained until his return to Keith county, Nebraska, about the first of April, 1918. It is stipulated that Harris Brothers, referred to in the testimony in the case, purchased the ranch from the defendant for $33,000, and there is no other purchaser referred to in the case. No question is made of the validity of the written contract, and the chief question is whether plaintiff procured the purchaser and thereby earned the commission. At the outset it should be stated that A. R. Thompson testified that he was the agent of the purchasers, and not of the owner. Defendant's evidence tended to show that Charles Richards, and not the plaintiff, procured the purchaser.

Plaintiff himself testified that "along the first of June" (1918) he and A. R. Thompson went to Harris Brothers to show them defendant's ranch, and were informed by Harris Brothers that they had seen the ranch and that it pleased them; that they thought it could be bought cheaper, and that plaintiff told them he did not think it could; that Thompson said, "How about $12.50 per acre?" ($30,000), and plaintiff then said that if they wanted to put up the money he would see defendant, but that he

knew it would not do any good; that Harris Brothers then gave Thompson a check ($500) for payment on the ranch, and that then he and Thompson started to see defendant and met him on the road; that, before they started, he had asked Harris Brothers if they could not buy it for $12.50 if they would give $14 ($33,600), and that Harris Brothers then held a conference and said they would; that plaintiff and Thompson met defendant at the bridge, and plaintiff offered him the $500 check, and said to him, "Will you take $12.50 for your ranch this morning?" and that defendant answered, "No," and then plaintiff said, "Well, you don't have to. I can get $14 for it. I have sold it for $14;" that defendant replied that he did not have time then, but would meet them at Lemoyne at 2 o'clock and would talk deal then; that, just when plaintiff and Thompson got to Lemoyne, Frank Harris came and told them that defendant had been there and would not deal with · plaintiff or Thompson; that plaintiff also saw defendant in Lemoyne that afternoon, and that defendant told plaintiff that Charlie Richards had brought the purchaser there, and that plaintiff had not, and that defendant did not owe plaintiff anything and would not pay him anything. Plaintiff further testified that neither he nor Thompson had ever taken Harris Brothers to the land; that he had said to them that he would try to get them the ranch for $12.50 an acre, and that he had tried to do so; that he was then working for Harris Brothers "in a way." Nowhere in plaintiff's testimony does he state or claim that he or any one for him ever had any conversation or communication with Harris Brothers at all about the land until the day "along the first of June" above referred to. Thompson's testimony corroborates this, and the undisputed evidence of the defendant shows that, before then, Charles Richards, defendant's son-in-law, had taken the Harris Brothers and their wives to see the ranch and had introduced them to the defendant, Stansbery; that they were pleased with the ranch, and that the price was agreeable, and that the deal was hanging for a day or two only on the point of whether

the cash payment was to be $10,000 or $12,000. The activities of Richards were the effective cause of producing the purchaser, and the sale was practically completed before either plaintiff or Thompson ever said anything to Harris Brothers on the subject; and defendant offered to prove on the trial that he had paid Richards $1,200 as commission for selling the place. As plaintiff's evidence showed that neither he nor any one for him effected the sale or even contributed to that result, he is entitled to no commission. *Stewart v. Smith,* 50 Neb. 631; *Langhorst v. Coon,* 53 Neb. 765; *Higinbotham v. McKenzie,* 88 Neb. 323; *Starbird v. McShane Timber Co.,* 94 Neb. 79; *Goodwin v. Haller,* 97 Neb. 209; *Hodgman v. Thomas,* 37 Neb. 568.

There is another reason, that plaintiff cannot recover in this case. Plaintiff's own testimony shows that, unknown to defendant, he was acting in the interest of the purchaser. It shows that, knowing that Harris Brothers would pay $14 an acre for the ranch, he tried to get the defendant to sell it to them for $12.50 an acre. This dual service is alone sufficient to defeat plaintiff's right to any commission or compensation. *Campbell v. Baxter,* 41 Neb. 729; *Strawbridge v. Swan,* 43 Neb. 781. As the evidence of plaintiff conclusively shows both that he did not procure the purchaser and that he was rendering double service without the knowledge of his principal, he cannot recover in any event.

We therefore recommend that the judgment of the district court be reversed and the action dismissed.

PER CURIAM. For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the action dismissed, and this opinion is adopted by and made the opinion of the court.

REVERSED AND DISMISSED.