JAMES SANTEE, Appellee, v. LUTHERAN MUTUAL AID SOCIETY, Appellant.

No. 44681.

May 9, 1939.

Rehearing Denied September 22, 1939.

Hagemann, Hagemann & Hagemann, for appellant.

Uhlenhopp & Uhlenhopp, for appellee.

RICHARDS, J.—On March 2, 1937, a hundred or more copies of a circular letter were mailed by defendant to various real estate agents. One of these agents was plaintiff. A portion of the letter, of importance on this appeal, was this:

"Dear Sir: Enclosed find our latest farm list dated February 24, 1937. * * * For your information we will pay a commission of 3% on any farm sold by you."

The remainder of the letter identified the farms, and set out the selling price for each, the terms and times of payments, rates of interest, and other contractual obligations to be undertaken by purchasers. The letter fixed the price of the "Waite" farm, one of those listed, at $18,000. Plaintiff founds his cause of action upon this letter, claiming that pursuant to its terms he procured one Rodenbeck as a purchaser willing, ready, and able to buy the Waite farm for the price and on the terms specified by defendant. The action was brought to recover 3% of the $18,000. Upon a verdict for plaintiff in the amount claimed a judgment against defendant was rendered. Defendant has appealed.

The question is presented whether the court erred in overruling defendant's motion for a directed verdict, made at the close of the evidence. One ground of the motion was that the

evidence was wholly insufficient to support a verdict for plaintiff and wholly failed to establish that a sale of the farm was made through the efforts of plaintiff. Defendant urges that upon this ground the motion should have been sustained.

In order to evaluate defendant's contention we turn to the record. Therein the parties concede that on May 22, 1937, the Waite farm was sold by defendant to one Rodenbeck, already mentioned. The sale accorded with the terms set out in the circular letter, and was for the stated price of $18,000. At this point there comes into the narrative another real estate agent. His name was Leslie Santee. He too received one of the circular letters. Beginning in April 1937 each of the Santees, that is Leslie Santee and plaintiff James Santee, had separately been interviewing Rodenbeck in endeavors to procure him as a purchaser of the Waite farm. Each knew of the other's rival activities. Following the sale defendant paid a 3% commission upon the $18,000 to Leslie Santee, deeming him the agent who had produced the purchaser. Plaintiff's claim is that it was he who was entitled to the commission.

At no time and in no manner did defendant recede from the price demanded for the farm or from the terms of sale, all as stated in the letter. Nor is there any suggestion in the record that defendant was other than entirely neutral to the two agents and their endeavors. The position of defendant at all times was that an agent operating under authority of the letter in order to earn a commission, would be compelled to produce a purchaser who would buy the farm at the price and on the terms that had been fixed. There was no conduct on part of defendant, in the way of otherwise availing itself of plaintiff's services, that might entitle plaintiff to a commission for a partial or modified performance of the undertakings specified and required in the letter. In other words, the only question on the record made in this case is whether plaintiff succeeded in meeting the letter's terms. As bearing on that query testimony was offered that, while showing Rodenbeck other farms, plaintiff drove along one side of the Waite farm and informed Rodenbeck it could be purchased upon favorable terms for $18,000. Later, upon at least two occasions, plaintiff attempted to persuade Rodenbeck to agree to purchase the farm, and directed him to seek information from the son of a former owner. The son recommended the farm to Rodenbeck. Upon another oc-

casion plaintiff called one of defendant's representatives into a conference with Rodenbeck. The purpose was to dispel the latter's belief that the land could be purchased at a price less than $18,000. But neither at this conference nor at any other time was plaintiff able to procure Rodenbeck's assent to a purchasing of the farm. At the last conference plaintiff had with Rodenbeck the most favorable thing the latter said was, in effect, that he might buy the farm for $18,000 if he was sure that was the bottom price, but that he would have to look over the place. Within three or four days thereafter the other agent, Leslie Santee, succeeded in taking Rodenbeck and his wife to the farm. There the Rodenbecks talked with the tenant and his wife. The tenant said the farm was a good one. Considerable time was expended in examining the soil and the improvements. Upon this occasion the Rodenbecks signed an agreement to purchase the farm for $17,000. The agreement was written by Leslie Santee. Upon the latter forthwith taking this writing to defendant it was promptly rejected. This information being brought back by Leslie Santee to the Rodenbecks, they, on the same or the following day, stated to him that they had concluded to purchase the farm for the $18,000 on the terms fixed in the circular letter. Leslie Santee at once advised defendant. A contract was drafted accordingly, and it was signed by the Rodenbecks and defendant. In these occurrences plaintiff had no part. Such being the record it is apparent that the evidence would not warrant a jury in finding that plaintiff had done that which constituted his undertaking. Specifically he was to produce for defendant a purchaser at the price and on the terms that had been prescribed. Blodgett v. Sioux City & St. P. Ry. Co., 63 Iowa 606, 19 N. W. 799; Ford v. Easley & Co., 88 Iowa 603, 55 N. W. 336. At no time had this been done so far as plaintiff was concerned. And at no point in the sequence of events could he have gone to defendant and said, here is a buyer on the terms you prescribe. In argument plaintiff stresses the thought that the sale of the farm was actually made at the conference when plaintiff and defendant's representative endeavored to impress on Rodenbeck that the price and terms were unalterable. But an impression on Rodenbeck's mind, whatever conjecturally it may have been, was not the equivalent of his assent to purchase. It was the other agent who procured the assent, that made Rodenbeck a purchaser, and having

so done, it was Leslie Santee who was able to present a purchaser to defendant. Plaintiff's failure and the other agent's success in accomplishing the sine qua non was a part of the inevitable risk of the business plaintiff had undertaken. When one of the agents produced a person he had induced to become the purchaser, and the bargain was struck at the fixed price and specified terms, the defendant could not say to such successful competitor, "This purchaser was first approached by your rival and you should have refused to treat with him on the subject." "There is no legal principle on which such a position could rest." Vreeland v. Vetterlein, 33 N. J. Law 247, cited in Fenton v. Miller, 153 Iowa 747, loc. cit. 762, 134 N. W. 95, loc. cit. 100. Because the motion for a directed verdict should have been sustained, the judgment of the trial court is reversed. —Reversed.

MITCHELL, C. J., and STIGER, HAMILTON, OLIVER, HALE, and MILLER, JJ., concur.

SAGER, J., takes no part.