## PROVIDENT TRUST CO. v. JORDAN et ux.—242 S. W. (2d) 757.

Middle Section.    June 29, 1951.

Petition for Certiorari denied by Supreme Court, October 9, 1951.

Walker & Hooker, K. Harlan Dodson, Jr. and Ferriss C. Bailey, all of Nashville, for appellants.

Hugh B. Helm, and Lutin & Levine, all of Nashville, for appellee.

HICKERSON, J. The bill was filed by Provident Trust Company against Omer H. Jordan and wife, Hilda Jordan, to collect a real estate commission of $1,100 which complainant alleged was due it by defendants.

Defendants denied that complainant was entitled to the commission.

The Chancellor held: "That the complainant, through James C. Horner, was the proximate, efficient, and procuring cause of the sale in question and that complainant is therefore, entitled to a judgment for the commission as sued for."

Decree was entered accordingly.

Omer H. Jordan and Hilda Jordan appealed to this court.

The assignment of error presents two questions:

1. When the owners list land for sale with several brokers, with no listing exclusive, and the brokers act independently of each other, are the owners bound, at their peril, to decide between the conflicting claims of the brokers as to commission; or may the owners, in the absence of fraud or partiality, pay the commission to the broker who completes the sale?

2. Was complainant, "the proximate, efficient, and procuring cause of the sale in question"?

There is very little dispute about the material facts.

Defendants owned a house and lot on Estes Road in Davidson County, Tennessee, known as Lot No. 8 on the map of Comptonwood Subdivision. This realty was listed for sale with several real estate brokers, including complainant. No listing was exclusive.

Complainant, acting through James C. Horner, showed the house and lot to Dr. Hanley Sayers and his wife. These prospective purchasers examined the property in detail with Mr. Horner and Mr. Omer Jordan. Certain features of the house did not please them. In order to make the trade with Dr. Sayers, it was necessary to take as a part of the purchase price a less valuable house and lot which Dr. Sayers owned. After Dr. and Mrs. Sayers had discussed the trade with each other, it was decided by them that the price of the Jordan house and lot was too high; so, as Dr. Sayers stated: "We more or less gave it up as an impossibility." Thereafter, defendants did about $3,000 worth of improvements on the house; put in two tile baths, installed an oil furnace, redecorated it throughout; and did some work on the basement. These improvements met some of the objections which Dr. Sayers had to the house, but they were made solely by defendants without consulting Dr. Sayers or anyone else as to them.

When the improvements were completed, Omer H. Jordan told Mr. Horner that the house was again "ready to sell," and that Mr. Horner had better get busy; for Chris Power, another real estate agent, was a friend of Dr. Sayers. A few days passed and Chris Power brought defendants a written offer from Dr. Sayers to buy the property which offer was accepted; and the sale was

made for the consideration of $20,000 in cash and the transfer of the Sayers' small house at a value of $10,000. Defendants paid the full commission to Chris Power, or to the company for whom he worked.

 ■ Complainant first contacted Dr. Sayers about this trade, but no agreement was reached by Dr. Sayers and the owners as a result of the efforts of complainant. At no time did Dr. Sayers make any definite proposition concerning the trade to Mr. Horner. The actual price which Dr. Sayers would receive for his small house was not discussed. Wherefore, complainant never produced a purchaser who was able, ready, and willing to buy the Jordan house and lot. Dr. Sayers was possibly able— though he expressed some doubt on that question—but he was certainly not ready and willing to purchase the house and lot during his discussion with Mr. Horner.

All of the details of the transaction were worked out by Chris Power. He and Mr. Horner were rival agents, working independently of each other. Mr. Horner did not complete the sale. Mr. Power did. Mr. Horner, Mr. Power, Dr. Sayers, and defendants knew that each of these agents was interested in making the sale. Mr. Power was a close personal friend of Dr. Sayers; Mr. Horner was only a casual acquaintance. Mr. Horner was a close personal friend of defendants; Mr. Power was only a casual acquaintance of defendants. As between Mr. Horner and Mr. Power, defendants much preferred that Mr. Horner make the sale and receive the commission. There is no intimation of fraud or partiality on the part of defendants with respect to the two real estate agents. The owners were neutral in so far as the two agents were concerned. They simply accepted the first definite offer of sale that was presented to them; sold the property accordingly; and paid the agent who

made the sale the commission. That agent was Chris Power.

About a week later, Mr. Horner called Mr. Jordan to inquire about the house and lot. At that time Mr. Jordan told him that it had been sold to Dr. Sayers. Mr. Jordan expressed regret that Mr. Horner had not completed the sale and received the commission. Mr. Horner took the position that Dr. Sayers was his customer, or client; and that Mr. Jordan should have protected him and should have paid the commission to him. Being unable to adjust the matter, complainant brought this suit.

(1) It is our opinion that the decree of the Chancery Court is erroneous.

In Glascock v. Vanfleet, 100 Tenn., 603, 46 S. W. 449, 450, the Court said: "It is insisted that Glascock, having first conferred with Vanfleet about the property, and furnished him information, was the real moving and efficient cause of the sale. If this were so, he would be entitled to the commission. But the proof is clear that the property was in the hands of several agents for sale, and neither of them had any exclusive control or disposition of it. It was simply a race of diligence between the several agents which should find a purchaser and effect a sale. It does not appear that Glascock notified either the Raja heirs or the Gilchrist Company that Vanfleet was a possible purchaser, and he had no part in bringing Vanfleet and the Gilchrist Company together.

"It is true that when a broker is employed to sell real estate, and brings the property to the notice of a purchaser, and opens up negotiations with him, the owner cannot step in and complete the sale, and escape liability for commission. Royster [Waldran & Bacon] v. Mageveney [77 Tenn. 148], 9 Lea 148; Arrington v. Cary [64 Tenn. 609], 5 Baxt. 609. This rule is conceded to

be correct. But when a principal employs more than one broker, and the several brokers act independently, and with knowledge of this fact, the one who first completes a sale is entitled to the commissions. Vreeland v. Vetterlein, 33 N. J. L., 247; Francis v. Eddy [49 Minn. 447], 52 N. W. [42], 43; Platt v. Johr, 36 N. E. 294; Scott v. Lloyd [19 Colo. 401], 35 P. 733; Ward v. Fletcher, 124 Mass. 224; Dreyer v. Rauch, 3 Daly, [N. Y.], 434; Baker v. Thomas [12 Misc. 432], 33 N. Y. S. 613; Mears v. Stone, 44 Ill. App. 444; Farrar v. Brodt, 35 Ill. App. 617.

"The same principle applies in all the cases, to wit, that the owner cannot interfere, but the several brokers are free to act independently of each other, and the owner is under no obligation to decide between their conflicting claims, but only to remain neutral as between them, and between them and the purchaser."

In the Glascock case the suit was against the purchaser who had evidently agreed to pay the commission of the broker, so the statement of the court relating to the duty of the owner where rival agents attempt to effect a sale of land is dictum.

In Newman v. Hill, 29 Tenn. App. 388, 196 S. W. (2d) 1008, 1009, an exclusive contract to sell was given one broker. After the expiration of the exclusive contract, the owner sold the land through another broker to a purchaser who had been first contacted about the property by the original broker. In denying the original broker a recovery of the commission against the owner, this court said:

"The case is that of rival agents acting independently of each other and in which the one who first finds a purchaser satisfactory to the owner and completes the sale is entitled to the commission. Glascock v. Vanfleet, 100 Tenn. 603, 46 S. W. 449, 450, seems to us to be controlling.

In that case the owner had the property listed with several brokers who acted independently of each other. Glascock was the first agent who had any negotiations with Vanfleet about the property, and he had several conversations with him about it, but Vanfleet did not make him any offer. The sale was made by Gilchrist & Company, another agent, and when Glascock learned that Vanfleet was about to deal with Gilchrist he notified him that he would claim a commission if he purchased the property through the Gilchrist agency. Vanfleet denied that he was entitled to a commission, but agreed to pay the commission if Glascock could establish his claim to it.

"The court held that it was a race of diligence between the several agents which of them should find a purchaser and effect a sale."

As stated, no fraud nor partiality on the part of the owner is shown in regard to these rival agents, who were acting independently of each other. The owners accepted the contract from the agent who first presented a valid, enforceable contract to them and paid to such agent the full commission when the sale was completed. Under these circumstances, the owner should not be penalized by being compelled to pay two full commissions.

■ (2) We think the Chancellor erred when he held that complainant was the proximate, efficient, and procuring cause of the sale.

Complainant never reached the point in its negotiations with the purchasers where the details of the trade were even discussed. These two agents were interested in making the sale under nonexclusive contracts. That agent who first worked out the definite contract between the owners and the prospective purchaser was the proximate, efficient, and procuring cause of the sale. That agent was Chris Power; and it was he who first produced

a purchaser, acceptable to the owners, who was ready, able, and willing to purchase the property. 12 C. J. S., Brokers, Section 92, page 213.

The assignment is sustained. The decree of the Chancery Court is reversed, and the bill dismissed. Tax all costs against the Provident Trust Company.

Felts and Howell, JJ., concur.