C. R. REED and DON BEATON,

*Plaintiffs and Appellants,*

vs.

PETER B. TAYLOR,

*Defendant and Respondent*

and

HOMER LOUCKS,

*Impleaded Defendant and Respondent.*

(No. 2788; February 25th, 1958; 322 Pac. 2d. 147)

For the plaintiffs and appellants, the cause was submitted upon the brief and oral argument of Mr. William D. Redle, of Sheridan, Wyoming.

For the defendant and respondent, the cause was submitted upon the brief and oral argument of Mr. R. G. Diefenderfer, of Sheridan, Wyoming.

For the impleaded defendant and respondent, the cause was submitted upon the brief and oral argument of Mr. Henry A. Burgess, of Sheridan, Wyoming.

Heard before Blume, C. J. and Harnsberger and Parker, JJ.

## OPINION

Mr. Justice HARNSBERGER delivered the opinion of this court.

Plaintiffs in four causes of action sought recovery of a $4,200 real estate broker's sales commission claimed to be due them from defendant Taylor on account of a sale made by Taylor of his ranch property.

The evidence is undisputed that about June 21, 1954, Mr. Taylor asked Mr. Reed to try and find a purchaser for his land and livestock and machinery at a total price of $164,455. Taylor then verbally made an exclusive listing with plaintiffs, who were licensed real estate brokers, to sell approximately 11,000 acres of

his lands at a per-acre price of $12, the brokers to receive as commission on such a sale five percent of the selling price of the *land only*. About January 18, 1955, plaintiffs produced a prospect who met with Taylor and plaintiffs and at that meeting a sale of Taylor's other ranch holdings was discussed, as well as the sale of his lands. Taylor then reduced the per-acre price of his lands to $11 per acre. A tentative evaluation of Taylor's cattle was arrived at, the amount being $36,-000, but Taylor's offer to sell his lands at the reduced price of $11 per acre was not accepted by the prospect. The prospect then made a counteroffer of $7.50 per acre for the lands, but this was refused by Taylor and the parties did not come to any agreement and no sale of the Taylor properties resulted. Taylor then advised the plaintiffs that the listing of his lands with them would no longer be exclusive and that he was also listing his lands with other real estate agents. This he later did, making such listing at the same price of $11 per acre with defendant Loucks. No further negotiation between Taylor and the prospect was developed by the plaintiffs although plaintiffs once told

Taylor the prospect was looking for him. Later on, the original prospect and Taylor had an accidental meeting during which the prospect offered Taylor $9 per acre for his lands, but stated he was not interested in buying Taylor's cattle. This offer Taylor refused. Thereafter, one of Loucks' salesmen told the prospect he could buy the whole Taylor outfit in a package deal for $130,000. The prospect responded that this was a "brand new deal" and that he was interested. That same evening Loucks' salesman succeeded in obtaining the prospect's agreement to purchase the entire Taylor holdings for $130,000, and thereupon a contract for such a sale was immediately successfully negotiated and the same was consummated in September of 1955.

The trial was to the court which made findings substantially paralleling this evidence and concluded that defendant Loucks, through his agent the salesman, was the sole and only efficient procuring cause of the sale of Taylor's entire ranching outfit to the customer; that plaintiffs were in no way connected with that sale and did not in any way assist in making it; that Taylor did not in any manner circumvent plaintiffs in making the sale and did not in any manner act in bad faith or defraud plaintiffs or prevent them from making sale of the Taylor real estate to plaintiffs' original prospect or to anyone else; that Taylor was not under duty to give plaintiffs opportunity to make a package sale of his entire outfit and plaintiffs were not entitled to the claimed commission in the sum of $4,200. Thereupon the court rendered its judgment that plaintiffs take nothing and dismissed their action awarding costs against them. From these findings and judgment the plaintiffs have appealed.

The position of defendant Loucks is of no importance as it cannot affect the issues raised upon this appeal.

It seems clear to us that the evidence is sufficient to support the court's determination of the facts, and this leaves for our decision the bare question whether under such circumstances plaintiffs are entitled as a matter of law to a broker's commission.

Appellants have not suggested fraud or bad faith on the part of defendant Taylor. Consequently, these questions are eliminated from consideration and decisions which hinge upon fraud or bad faith will not be discussed.

In Annotation, 43 A.L.R. 1104, is is said:

"The general proposition is well established that if property is placed in the hands of a broker for sale at a certain price, and a sale is brought about through the broker as a procuring cause, he is entitled to commissions on the sale even though the final negotiations are conducted through the owner, who in order to make a sale accepts a price less than that stipulated to the broker. * * *"

Cases from thirty-three jurisdictions in the United States, as well as others from England and Canada, are cited and lend authority to this statement.

We do not dispute the soundness of this general rule, but its application under the facts found in this case is questioned. The evidence shows the negotiations which resulted in sale were not participated in by the plaintiffs nor conducted by the owner, but were arranged, commenced, and consummated as a package deal entirely by and through the efforts of plaintiffs' competitor, the salesman of Loucks. Under this evidence the court was entitled to find as it did that the defendant Loucks was the efficient procuring cause of the sale. The rule applicable in such a case is:

"Although the broker may be the means of first bringing the parties together and of opening negotiations with them, yet if the negotiations are unproductive and the parties in good faith withdraw therefrom and abandon the proposed purchase and sale, a subsequent renewal of negotiations followed by a sale at a less price does not entitle the broker to the commissions, as he cannot be said to be the procuring cause of the sale." 43 A.L.R. 1116, citing decisions from ten states. Another statement in the Annotation of 43 A.L.R. 1120, which is well supported by authorities, bolsters this principle:

" * * * where a broker brings a prospective customer to an owner, but no sale results, and, after a reasonable time has elapsed without any more efforts on the part

of the broker, the owner sells the property to the same person through another broker at a less price, the first broker is not entitled to commissions."

So it is also generally held that where more than one broker is authorized to sell and a sale is made by one of the brokers to a prospect first produced by another broker, the broker bringing about the meeting of minds of the buyer and seller in consummation of sale is the broker entitled to commission.

The following are among the cases supporting this view: Vreeland v. Vetterlein, 33 N.J.L. 247; Patten v. Willis, 134 Ill.App. 645; Morton v. Barney, 140 Ill. App. 333; Farrar v. Brodt, 35 Ill.App. 617; McGuire v. Carlson, 61 Ill.App. 295; Hobbs v. Edgar, 22 N.Y. Misc. 510, 49 N.Y.S. 1138, 23 N.Y. Misc. 618, 51 N.Y.S. 1120; Chaffee v. Widman, 48 Colo. 34, 108 P. 995, 139 Am.St.Rep. 220, 251 n.e; Witherbee v. Walker, 42 Colo. 1, 93 P. 1118; Conway-Bogue Realty & Investment Co. v. Burch, 93 Colo. 518, 27 P.2d 500; Robert A. Cline, Inc., v. Union Thread Co., 73 Ohio App. 393, 56 N.E.2d 517; Francis v. Eddy, 49 Minn. 447, 52 N.W. 42; Esterly-Hoppin Co. v. Burns, 135 Minn. 1, 159 N.W. 1069; Douville v. Comstock, 110 Mich. 693, 69 N.W. 79; Higinbotham v. McKenzie, 88 Neb. 323, 129 N.W. 263; Fenton v. Miller, 153 Iowa 747, 134 N.W. 95; Santee v. Lutheran Mut. Aid Soc., 226 Iowa 1109, 285 N.W. 685; Dobson v. Wolff, 74 So.Dak. 493, 54 N.W.2d 469; Latshaw v. Moore, 53 Kan. 234, 36 P. 342; Frink v. Gilbert, 53 Wash. 392, 101 P. 1088; Dore v. Jones, 70 Wash. 157, 126 P. 413; Hege v. Voelker, 183 Wash. 375, 48 P.2d 579; Leadville Mining Co. v. Hemphill, 17 Ariz. 146, 149 P. 384; Young v. Whitaker, 46 Utah 474, 150 P. 972; Brooks v. Geo. Q. Cannon Ass'n, 53 Utah 304, 178 P. 589; Murray v. Miller, 112 Ark. 227, 166 S.W. 536, Ann. Cas. 1916 B 974; Crandall v. Cousins, 104 Okla. 139, 230 P. 511; Hutson v. Stone,

119 So.Car. 259, 112 S.E. 39; Glascock v. Vanfleet, 100 Tenn. 603, 46 S.W. 449; Provident Trust Co. v. Jordan, 35 Tenn.App. 74, 242 S.W.2d 757; Higgins v. Miller, 109 Ky. 209, 58 S.W. 580; Edwards v. Pike, 49 Tex.Civ.App. 30, 107 S.W. 586; Griffith v. Shofner, Tex.Civ.App., 184 S.W. 340; Brown v. Odneal, Tex. Civ.App., 239 S.W. 350; see Gross on Real Estate Brokers, 1917, § 98, p. 97; 2 Mechem on Agency, 2d ed., 1914, § 2457, p. 2059, n.43.

The rule is, of course, subject to the exception that the owner may not collusively or fraudulently prefer one broker over another.

The fact that the purchase price or its terms are modified in the ultimate negotiations fostered by the broker efficiently causing the sale will not entitle the broker first producing the prospect to a commission or defeat or modify the right of the procuring broker to his commission.

Where there are two or more brokers employed, the effect of the "efficient procuring cause" rule is to require that the sale arise from the foundation laid by the broker in order to entitle him to commission. The mere introduction of a prospect to an owner, or even the broker's participation in unsuccessful negotiations between the parties, does not earn the broker a commission. Such efforts may serve to prevent an owner escaping liability for a commission if the owner renews or directly continues negotiations with the prospect, ignoring the broker while inducing the prospect to buy on the same terms listed with the broker. This would still be true even though the ultimate sale is made at a price different from that for which the broker was authorized to sell. However, an entirely different situation is presented and a different rule

obtains in a case where an owner lists his property for sale with more than a single broker. In such a case the introduction of a prospect is merely one step in providing the foundation from which the broker may develop a sale. But taking that step does not preclude another authorized broker from laying his own foundation and negotiating and completing a sale with the same prospect. This is more especially so when the efforts of the first broker progress no further toward completing a sale than an unsuccessful meeting and discussion between the principals without its resulting in a meeting of their minds. The simple meaning of this is that where agency to sell is given to more than one, a first approach and negotiation does not earmark a prospect as the exclusive customer of the introducing broker. By listing property for sale with others, each broker is warned that he is operating in a competitive field and in the absence of fraud or collusion to the victor will belong the spoils and whatever effort the loser has put into the race is lost to him.

It is undisputable that the sale in this case was not brought to completion by plaintiffs, and it is apparent that insofar as Taylor was apprised or informed the negotiations with plaintiffs' prospect had ended when Taylor and the prospect parted on January, 1955, without reaching a purchase and sale agreement. The fact that there was a casual meeting between the principals at a later date with a new offer and refusual only served to emphasize that the parties were unable to get together without an additional guiding influence. This assistance was not furnished by the plaintiffs. Neither is it shown that there was any arrangement made thereafter nor even a suggestion offered by plaintiffs for a further negotiation between the parties. Plaintiffs' telling Taylor the prospect was looking for him did not suffice as such a suggestion. Certainly the plaintiffs made no effort to bring the parties

together again. It was only after another broker conceived a new basis for sale that there was further negotiation between Taylor and the prospect, except at the accidental meeting of the parties where no progress toward agreement was made. Even when plaintiffs told Taylor sometime in April, 1955, that the prospect was looking for him, the record is silent in showing there was any effort put forth on the part of plaintiffs toward getting the prospect and owner together. The position of plaintiffs is that of the dog in the manger. Notwithstanding plaintiffs were unable to bring the parties together, they contend no other broker had that right. It profits plaintiffs nothing to now protest that they could have done as well or even better than the broker who succeeded in making the sale. Plaintiffs had the opportunity and privilege of suggesting and advancing the same proposal for a package deal at the same price of $130,000 and could have carried that offer to the buyer, but they did not see fit to do so. They cannot now complain that their competitor, acting in the interest of the owner, developed an entirely new sale basis and secured its acceptance by both seller and buyer.

We find no error in the proceedings below or the judgment rendered and the same is affirmed.

AFFIRMED.